NATIONAL LEAGUE OF COMMISSION MERCHANTS OF UNITED
STATES v. HORNUNG.

(Supreme Court, Appellate Division, Fourth Department.   December 29, 1911.)

1. EXCHANGES (§ 12*)—DIFFERENCES BETWEEN MEMBERS AND NONMEMBERS—
ARBITRATION—POWERS.

Where the constitution and by-laws of a membership corporation of
commission merchants distinctly provided for the trial and determina-
tion of disputes between members and nonmembers, at the instance of
the latter, and defendant, a member, voluntarily submitted a claim
against him to the corporation's arbitration committee, and by two ap-
peals brought himself within its jurisdiction, he could not thereafter
successfully claim that the corporation had no authority to pass on the
claim of one who was not a member.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. § 15;  Dec. Dig.
§ 12.*]

2. EXCHANGES (§ 10*)—CLAIMS AGAINST MEMBERS—APPEAL—QUALIFICATIONS
OF MEMBERS OR APPELLATE COMMITTEE.

Where defendant, a member of an exchange corporation of commis-
sion merchants, appealed from an adverse decision of the arbitration
committee of his branch league to the branch committee, and thence to
the national executive committee, as he was entitled to do, the fact that
one of the members of such appellate tribunals was also a member of
the original arbitration committee that heard the controversy did not
disqualify him, or show that defendant had not been heard by an im-
partial appellate tribunal.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. § 14;  Dec. Dig.
§ 10.*]

3. EXCHANGES (§ 10*)—CLAIMS AGAINST MEMBERS—TRIAL—APPEAL—RIGHT TO
BE PRESENT.

Where an appeal from a decision of an arbitration committee of an
exchange on a claim against a member was conducted according to the
usual procedure and based on the record, the member was not denied
a fair trial on the appeal by reason of being denied the right to be pres-
ent at the hearing of the appeal.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. § 14;  Dec. Dig.
§ 10.*]

4. EXCHANGES (§ 10*)—CLAIMS AGAINST MEMBERS—TRIAL—APPEAL—HEARING.

That the chairman of the executive committee of an exchange, after
the hearing of an appeal on a claim against defendant, as a member,
stated to defendant that the committee only went over such part of the
record as was thought essential to the case, did not show unfairness on
the part of the committee, or that it had acted on only a portion of the
record.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. § 14;  Dec. Dig.
§ 10.*]

5. EXCHANGES (§ 10*)—MEMBERS—DIFFERENCES—ADJUSTMENT—SCHEME—AS-
SENT.

Where a person becomes a member of an exchange, whose charter pro-
vides a method for adjusting difficulties and settling conflicting de-
mands, he assents to the scheme adopted, and, in the absence of fraud,
imposition, or gross injustice, will not be heard to impeach in the courts
the validity of the decision against him, nor can the courts examine the
merits of the controversy.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. § 14;  Dec. Dig.
§ 10.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EXCHANGES (§ 5*)—MEMBERSHIP—"CONTRACT."

Where defendant became a member of an exchange which provided by its constitution and by-laws a scheme for the adjustment of differ-ences between members and outsiders, and defined his relation to the exchange, such membership constituted a contract by which he was bound.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. §§ 5–7; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, .vol. 2, pp. 1513–1534; vol. 8, pp. 7615, 7616.]

7. EXCHANGES (§ 5*)—BY-LAWS—DIFFERENCES BETWEEN MEMBERS—TRIAL—EXPULSION.

Where an exchange of which defendant was a member provided for the trial of differences between members and nonmembers before an arbitra-tion committee, and authorized an appeal, not only to the branch com-mittee, but from the latter to the national executive committee, the ex-change was authorized to provide that any member or firm failing to settle a dispute as decided by the arbitration committee, or, if an appeal had been taken, by the branch league, or the executive committee of the national league, should after 60 days be dropped from the list of mem-bers, under the rule that a voluntary association may by its by-laws pro-vide expulsion as a penalty for disobedience of its laws.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. §§ 5–7; Dec. Dig. § 5.*]

McLennan, P. J., dissenting.

Appeal from Equity Term, Erie County.

Action by the National League of Commission Merchants of the United States against George Hornung. From a judgment dismiss-ing the complaint and ordering defendant's restoration to membership in plaintiff association, after trial and decision on the merits at an Equity Term, plaintiff appeals. Reversed, and new trial granted on the law and facts.

See, also, 72 Misc. Rep. 181, 129 N. Y. Supp. 437.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

August Becker, for appellant.
Frederick Haller, for respondent.

SPRING, J. The plaintiff, a membership corporation, was incor-porated in the state of Illinois in March, 1893. It consists of commis-sion merchants about 380 in number, and its purpose is set forth in .its certificate of incorporation as follows:

"The object for which it is formed is mutual aid in business, promotion of the best interests of shippers and receivers and to promote good feeling among all its members with a special outlook for their welfare, and to foster and encourage by all lawful and proper means and in a fraternal and friendly spirit by organized effort their welfare."

Branch leagues of the plaintiff were formed in several cities, and one in the city. of Buffalo early in 1908. The defendant became a member of the plaintiff in 1894 and of the Buffalo Branch when it was established. In 1898 the plaintiff adopted an emblem or trade-mark, which was duly registered, and was designed for the exclusive

use of its members, and it was extensively used by them on their stationery in their correspondence, and was regarded as a valuable right or privilege.

Article 18, § 4, of the constitution and by-laws of the plaintiff, pro-vides:

"In the event of any dispute, or difference, arising between a party not a member of the league and a member of any branch league, the party not a member may demand a trial of the case before the arbitration committee of the branch of which the other party is a member, and it shall be the duty of said arbitration committee within thirty days to take up the matter and within ninety days report their decision to both of the parties interested."

In case either party is dissatisfied, an appeal may be taken to the branch committee, where a new trial is to be had, and a further appeal is permitted by the aggrieved party to the National Executive Committee, which is a committee of the parent organization and is composed of one member elected by each branch league. The party not a member must declare, however, in writing his willingness to abide by the decision of this final tribunal, and a retrial does not seem to be required on this final appeal. By section 5 of article 11 of the constitution refusal of a member to submit a disputed account to the arbitrament of the branch league is to be followed by his expulsion from the plaintiff. In 1908 a claim against the defendant was presented by Loomis & Son, of Victor, N. Y., to the Buffalo Branch League for a sum alleged to be due to them for a quantity of potatoes sold to him. The gist of the demand was that the sale had been made and the defendant refused without cause to accept the potatoes, and the claimants sold them at a loss, for which they sought to hold the defendant liable. The matter was submitted to the arbitration committee, consisting of three members of the branch league, and a trial was had, the defendant being represented by counsel, and a decision in writing signed by the three members of the committee was rendered in favor of Loomis & Son for $70.31 damages, and $10 fees of the stenographer who took and transcribed the minutes of trial. The decision recited succinctly the grounds for the conclusion reached, and they appear to be reasonable and to justify the determination arrived at. The defendant appealed to the branch league, where a retrial was had, the defendant again giving testimony in his behalf, his counsel participating, and the decision was again in favor of the claimants for the full amount claimed, with $20 stenographer's expenses, which, by the written stipulation of both parties, were to be paid by the defeated party. The defendant thereupon appealed to the National Executive Committee, which body considered the appeal; and the proof shows during the consideration there was a division among the members of this tribunal and eventually by ballot it was decided in January, 1909, to allow one-half of the sum claimed, each party to pay one-half of the stenographer's charges. The claimants had in writing consented to accept and abide by the decision of this Executive Committee, and did so. The defendant refused to accept the decision, or pay the sum awarded to the claimants. Notice of the decision was transmitted to the branch league, of which the defendant

had notice, and also of the proceeding for his expulsion, and he appeared before the local body and was heard when the matter of his expulsion was up for consideration. He was finally expelled from the plaintiff. He continued, however, to use the emblem of the plaintiff in his business and threatened to persist in such use, and this action was commenced to restrain him from making use of this emblem or trade-mark. The defendant in his answer impugned the integrity of the 'decision against him, the legality of the alleged expulsion, and asked that his name be replaced on the roll of membership and his rights as a member of the plaintiff be recognized and continued; and the relief he asked for was granted by the judgment appealed from, and the complaint was dismissed.

[1] At the outset, it is contended by the respondent that the plaintiff had no authority to consider and pass upon the claim of Loomis & Son, as they were not members of the plaintiff. The constitution and by-laws of the plaintiff distinctly provide for the determination of such a claim. It is not important whether the defendant could be compelled to comply with this provision for he voluntarily submitted his case to the arbitration committee, and by two appeals he has brought himself within the jurisdiction of the plaintiff and assented to its authority to adjudicate upon the claim against him, and the objection is not now available to him. People ex rel. Brewster v. "Old Guard," 87 App. Div. 478, 484 et seq., 84 N. Y. Supp. 766; Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664.

[2] He claims that he was not given a fair trial, and that the branch league and the National Executive Committee were composed in part of members who were biased and prejudiced against him. A man named Paine was one of the arbitration committee who decided adversely to the defendant. He was, of course, a member of the branch league, and, when the new trial was heard by that body, he was present and may have participated. The defendant objected to him acting when the retrial was on, and also to the participation of other members who were present. There was no charge that any one of these men had any bias or animosity against the defendant, or that he was interested in the litigation or even friendly to the claimants. The objection to Paine was that he had been a member of the arbitration committee, and consequently had united in the determination against the defendant. The objection was not a valid one. A judge who tries an action may by statute be prohibited from participating in the decision of the case on appeal if he is then a member of the appellate court. The prohibition is wholly statutory. It may be that a man who is open to conviction and impartial may be the better qualified to reach a just determination of the action or proceeding upon the review by the appellate tribunal.

[3] Paine was a member of the Executive Committee, the ultimate tribunal, and the defendant again objected to him taking part in the decision or being present at the hearing. The chairman of the committee replied that he had no authority to exclude Paine from attending or participating, as he was regularly a member of the appellate body. The defendant asked to be represented by counsel, and, when this was refused, then in his own behalf, which was also denied.

Loomis & Son were not present either in person or by counsel. Paine took part in the discussion of the appeal, and may have voted, although that is not certain. There is nothing to show that any unfair advantage was taken of the defendant by that body. The proceeding apparently was conducted conformably to the procedure usual on these appeals. No interested party is entitled of right to be present, and the decision is based upon the record of the branch league.

[4] After the decision the defendant met the chairman of the Executive Committee, "and asked him whether they had gone over all the evidence, and he told him no, that they had not; that they only went over such part as he thought was essential to the case." In the first place, I doubt the competency of the admissions of the chairman of this tribunal to impeach its determination, and whatever there is in the record in any way assailing its validity is by declarations of the kind adverted to. Passing that, however, there is nothing in this informal street conversation with the chairman warranting any imputation upon the fairness of the conduct of the Executive Committee. The chairman was not required to read all the evidence or proceedings in the record presented. Other members may have read it and reported accurately its contents. Because of the division at one time among the members of the committee considerable discussion arose, so that they would be apt to ascertain what the record contained. The decision finally allowed one-half of the claim presented. The record is not before us, and, for aught that we know, the evidence supported the conclusion reached. The value of the produce was in controversy, and it is not unreasonable to infer there was a divergence in the testimony of the witnesses on this subject. The presumption is that the evidence sustained the decision.

[5] It is well settled that, when a person becomes a member of an association and its charter provides a method for adjusting difficulties and settling conflicting demands, he assents to the scheme adopted; and, in the absence of fraud or imposition or gross injustice, he will not be heard to impeach in the courts the validity of the decision against him, and the courts cannot examine the merits of the controversy. In re Haebler v. N. Y. Pro. Exchange, 149 N. Y. 414, 44 N. E. 87; Lewis v. Wilson, 121 N. Y. 284, 24 N. E. 474; Baxter v. McDonnell, 155 N. Y. 83, 101 et seq., 49 N. E. 667, 40 L. R. A. 670; Stein v. Marks, 44 Misc. Rep. 140, 89 N. Y. Supp. 921; People ex rel. Johnson v. N. Y. Pro. Exchange, 149 N. Y. 401, 409 et seq., 44 N. E. 84.

[6] When the defendant became a member of the plaintiff, he agreed to abide by its constitution and by-laws, which defined his relations to the organization, and was the contract by which he was to be bound. In re Haebler v. N. Y. Pro. Exchange, 149 N. Y. 415, 44 N. E. 87, supra; Belton v. Hatch, 109 N. Y. 593, 17 N. E. 225, 4 Am. St. Rep. 495; Bachman v. N. Y. Deutcher Arbiter Bund, 64 How. Prac. 442. In the case first cited the court used this language at page 427 of 149 N. Y., at page 91 of 44 N. E.:

"The relator had a right to become a member of this corporation, and to agree to be governed by its charter and by-laws, and, when he did so, they

expressed the contract by which he and every other member were bound, and which measured their rights, duties, and liabilities as members thereof. * * * 'A member of a corporation may so hedge himself in by agreement as to yield the protection which one seeks in the ordinary affairs of life, and enlarge the authority that may be used against him.' People ex rel. v. N. Y. Cotton Exchange, 8 Hun, 216, 220. Hence, to determine the rights of the parties to this controversy, we must be governed by the provisions of the appellant's charter and the by-laws it has adopted. As the members, who assented to them, are bound by the charter and by-laws of the corporation, their rights are to be measured by them, and a member should not complain of an expulsion or suspension where the proceedings are authorized and are fairly conducted under its laws."

The defendant consented to submit his claim to the original arbitration committee, and then by appeal he called upon the other tribunals to act upon the claim against him. He set these tribunals in motion to try and determine the validity and justness of the claim against him, and is effectually estopped from attacking successfully the jurisdiction of the tribunals or of their composition. People ex rel. Brewster v. "Old Guard," 87 App. Div. 478, 485, 84 N. Y. Supp. 766.

[7] Section 4 of article 13 of the constitution and by-laws confers authority upon each branch league to adopt its own by-laws, if not in conflict with the constitution and by-laws of the national organization. In pursuance of this authority, the Buffalo Branch League adopted the following by-law, which was in force during the pendency of the proceeding mentioned:

"Any member or firm failing to settle a dispute as decided by the arbitration committee, unless such decision is appealed from, or who shall refuse or neglect to settle the same as ordered by the branch league or the Executive Committee of the National League, as the case may be, after an appeal to them, shall after sixty days be dropped from the list of members and the secretary of the National League notified thereof."

In view of the objects designed to be accomplished by the organization, the financial integrity and standing of its members was of especial importance. The payment of his obligations by each member of this small body was deemed necessary to its maintenance. In order to aid in the accomplishment of this purpose and to avoid litigation on the part of its members, the plan mentioned for the speedy and just adjustment of disputed accounts was embodied in the organic law of the plaintiff. In order to make still more effective this feature of the scheme, the subordinate league in Buffalo imposed expulsion as the penalty to the member refusing to conform to the decision against him. This by-law is in harmony with the spirit of the organic law and within the compass of the authority to make by-laws bestowed upon the branch leagues. The local league was composed of a few men, and, if a member repudiated the decision of that body or of the ultimate tribunal, his continuance in membership might become an element of discord and impair the usefulness and efficiency of the organization.

The right of a voluntary association to provide in its constitution or by-laws expulsion as a penalty for an infraction or disobedience of its laws seems to be well settled. 1 Cooley's Briefs on Law of In-

surance, p. 128 et seq.; Niblack-Benefit Societies and Accident Insurance (2d Ed.) § 38 et seq.; Matthews et al. v. A. P. S. N. Y. et. al., 136 N. Y. 333, 339 et seq., 32 N. E. 981, 32 Am. St. Rep. 741; Taufer v. Brotherhood of .Painters, 137 App. Div. 838, 122 N. Y. Supp. 527. Such is the law in the state of Illinois, which granted to the plaintiff its charter. Allen v. Chicago Undertakers Ass'n, 232 Ill. 458, 83 N. E. 852; People v. Board of Trade, 224 Ill. 370, 79 N. E. 611.

None of the evidence in any of the hearings where the claim of the defendant was considered is before us, and we are not to assume that he did not have a fair trial, or that the decisions were not well sustained by the proofs. The presumptions to be indulged are all in favor of the regularity of the proceeding and the justness of the determinations made.

The judgment should be reversed.

Judgment reversed, and a new trial granted, on the law and facts, with costs to the appellant to abide event. All concur, except McLENNAN, P. J., who dissents.