OLIVER CABANA, JR., Appellant, v. HOLSTEIN-FRIESIAN ASSOCIATION OF AMERICA, and Others, Respondents.

Fourth Department, May 4, 1921.

Corporations — membership corporations — by-laws part of contract of membership — by-law providing tribunal for canceling advanced registry certificate of cattle of members — procedure by board of directors — notice and opportunity to be heard necessary — member must exhaust remedies within corporation before appeal to courts — suit to restrain corporation from canceling certificates of advanced registry — provision in judgment that board of directors need not confine itself to common-law evidence improper — court will not pass on title of directors to office in suit in equity.

A member of a membership corporation makes the by-laws thereof a part of his contract of membership and becomes bound by them.

The defendant, a membership corporation, was organized for the purpose of improving the breed of Holstein-Friesian cattle, and had adopted a system of rules for advanced registry as a privilege to its members following certain prescribed tests. In that connection it was provided by its by-laws that if a test had been previously accepted for advanced registry the superintendent " or the Board of Directors may cancel such acceptance and certificate, and in all such matters his decision shall be final." In a suit to restrain the defendant from canceling certificates of advanced registry, held, that said by-law provided a tribunal with power to cancel an advanced registry certificate if satisfied that there had been dishonesty or improper practices in making the test.

The grant of the power to the board of directors carried with it by necessary implication the law applicable to the exercise of such power and the procedure to be followed by the board of directors.

The board of directors can only exercise its power and authority on notice given and an opportunity to be heard.

The plaintiff was bound to exhaust his remedies within the defendant corporation before he could appeal to the courts for relief, even though the action of the corporation might deprive him of valuable property rights.

The provision in the judgment to the effect that a fair and impartial trial does not necessarily confine the board of directors to the receiving of common-law evidence, should be stricken out as it passes on a question in advance which may not arise.

In such a suit the court will not pass on the question whether the said directors were legally elected, since it is a collateral matter depending on legal principles and not a matter for equitable consideration.

The fact that the court acquired jurisdiction of the case on equitable grounds does not require it to determine the collateral question of title to office.

APPEAL by the plaintiff, Oliver Cabana, Jr., from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 1st day of July, 1920, upon the decision of the court rendered after a trial at the Erie Special Term.

The judgment adjudged that the board of directors of the defendant association had authority to cancel the advanced registry certificates of the records of the plaintiff's cattle after a hearing conducted as provided in said judgment and it enjoined the defendant association, its officers and directors, from canceling said certificates except after a hearing conducted as provided in said judgment. It also adjudged "that in this collateral proceeding the court will not determine the validity of the election of the directors, the executive committee, and of the officers of the defendant association." The plaintiff is the only party who appeals from said judgment and he appeals only from such parts of said judgment as provide:

*First.* That the board of directors of the defendant association is the proper tribunal to determine the validity of the advanced registry records of the plaintiff's cattle.

*Second.* That a fair and impartial trial by said board of directors does not necessarily confine the board to the receiving of common-law evidence.

*Third.* That the court in this action will not determine the validity of the election of the directors, the executive committee and of the officers of the defendant association.

*Devoe P. Hodson* and *Penney, Killeen & Nye,* attorneys [*Henry W. Killeen, Daniel J. Kenefick, Devoe P. Hodson* and *John A. Kelly* of counsel], for the appellant.

*Kellogg & Van Hoesen,* attorneys [*O. U. Kellogg, L. L. Babcock* and *C. M. Horn* of counsel], for the respondents Holstein-Friesian Association of America and others.

HUBBS, J.:

The respondent is a record association, maintaining and publishing a herd book for the recording of the pedigrees of Holstein cattle. It also maintains a system of additional registration of animals already registered in the herd book.

The additional registration of animals is kept in a record known as the advanced registry, and the right or privilege of having an animal listed in the advanced registry is governed by rules and regulations prescribed by the board of directors. The right to have an animal registered in the advanced registry is based upon the animal's performance in the production of milk and butter fat.

The respondent is a membership corporation, reincorporated under the present Membership Corporations Law for the purposes specified in and as created by chapter 333 of the Laws of 1885 of the State of New York, consolidating the Holstein Breeders Association of America, formed by chapter 447 of the Laws of 1880, and the Dutch-Friesian Herd Book Association of America, formed by chapter 207 of the Laws of 1882. It " is a non-stock corporation, and has no capital stock or stockholders; * * * it is not organized for pecuniary profit and pays no dividends to its members; * * * it is national in its character and a large majority of its members are residents of States other than of the State of New York, and its operations are not and were never intended to be confined to the boundaries of the State of New York." . Its charter declares its purposes to be: " Improving the breed of Holstein-Friesian cattle; ascertaining, preserving and disseminating, as provided in its By-Laws, all useful information and facts as to their pedigrees and desirable qualities and the distinguishing characteristics of the best specimens, and preparing, publishing and supplying all necessary volumes of the Holstein-Friesian Herd Book and generally for promoting and securing the best interests of the importers, breeders and owners of said cattle and thereby the public generally."

The association adopted a system of rules of advanced registry, regulating the manner of conducting and supervising the tests of animals for admission upon its records, which system was known as the rules of advanced registry. Rule VI, section 13, provided: " The acceptance of test for advanced registration rests in the discretion of the Association, and is not a matter of right accorded to members, but is a privilege to be granted or refused in the discretion of the Superintendent of Advanced Registry or the Board of Directors."

Such rules also required that a person who desired a record .

of any cow entered in the record of advanced registry should apply for permission to test the cow upon blanks furnished by the superintendent of advanced registry, which blanks provided that the application was subject to all existing rules and by-laws of the association. Permits to make tests were issued by the superintendent and the tests were made under the rules and by-laws of the association. After they were made, the owner of the cow applied to the superintendent for its admission to advanced registry in a sworn statement made by the owner and the inspector who made the tests. Such application contained the following statement: " All rules of the Holstein-Friesian Association covering the test of the above cow have been complied with, all information given concerning her is córrect, and this application is made subject to all existing Rules and By-Laws of the Association."

The appellant became a member of the association in the year 1913 and commenced making official tests of cows. Charles E. Cole was employed by the appellant as herdsman, made unusually high records with the cows tested by him and received from the appellant a bonus for high records. The appellant did a large business, selling over 880 head of cattle in four years for $1,750,000. In December, 1918, Cole left the appellant's employ and started in business for himself. The records which his cows established created suspicion and he finally made a written confession to the effect that the tests which he had conducted were fraudulent, that he had secretly injected into the milk from the cows being tested, hot water and cream from a rubber bag concealed under his clothing. He stated in such written confession that he had used the same method in testing the cows of the appellant while in his employ. The executive committee of the board of directors of the respondent association started to make an investigation. Cole then made an affidavit retracting his confession. The appellant, with his counsel, appeared before the executive committee of the respondent association and presented Cole's affidavit retracting the statements he had made in his confession. The appellant's counsel also presented a statement signed by the appellant and others, reading in part as follows: " We demand a public hearing upon the question of the truth of Cole's alleged confessions at which all parties interested may

appear and produce evidence and cross examine witnesses. Any cancellation in the absence of such a hearing will irreparably damage our property interests and our reputation."

Thereafter the secretary of the respondent association prepared and mailed to the appellant and others who signed the demand for a public hearing a notice of a full meeting of the board of directors at which a public hearing would be held for the presentation of any evidence that any party desired to present. Before the date of the meeting of the board of directors the appellant commenced this action for an injunction restraining the defendant from canceling the records of his cattle, the complaint alleging, in substance:

1. That the defendant's officers were elected at meetings held outside of the State of New York and for that reason they were not lawfully elected.

2. That the certificate increasing the number of directors to sixteen was not filed until July 16, 1919, and that such directors could not legally act until the filing of the certificate.

3. That the executive committee was not making a fair and impartial investigation; that the committee was prejudiced and had prejudged his records, and had determined that they were fraudulent, and that it intended to convoke the board of directors to procure the cancellation of his records.

4. That if his records were canceled property of great value would be destroyed, and that such action would result in a multiplicity of suits against him, and his good name as a man and a breeder would be irreparably injured.

5. That he had no adequate remedy at law.

The answer, in substance, alleged as follows:

1. That the legality of the election of the officers of the association could not be tested in this action.

2. That the executive committee was in good faith making a fair and impartial investigation and that the plaintiff had not exhausted the remedies afforded him by the by-laws of the association.

3. That the plaintiff, by participating in the meetings held outside of the State and by his dealings with the association and its officers, and by demanding a public hearing as to the truth of Cole's confession, was estopped from questioning the right of the association to hold its meetings outside the State,

and from questioning the legality of the election of its officers or of its right to cancel the records.

The foregoing statement of facts is sufficient for the purpose of making the determination which we think should be made in this case. The facts are more fully set forth in the able and exhaustive opinion delivered at the Special Term and reported in 112 Miscellaneous Reports, 262.

When the appellant became a member of the respondent association there was in existence and ever since has been a by-law adopted by the board of directors, known as subdivision 11 of rule VI, which provided as follows: " But no tests of cows shall be accepted for the Advanced Register by the Superintendent unless he shall be satisfied that such tests have been in all things fairly and honestly conducted and that the rules of the Association have been complied with. If the Superintendent shall be satisfied that any dishonest or improper practice in connection with the making of any test has been employed, or a reasonable suspicion thereof exists, he may reject such test, or if the same has been previously accepted by the issuing of a certificate therefor, he or the Board of Directors may cancel such acceptance and certificate, and in all such matters his decision shall be final."

The first part of the subdivision prescribes a course of action for the superintendent prior to the acceptance of a test and the issuance of a certificate, and prescribes when the superintendent may reject a test. The second part provides that the board of directors may cancel an acceptance and the certificate issued thereon. Upon becoming a member of the association the appellant made such by-law a part of his contract of membership and became bound by it. That was the contract which he made when he became a member. (*Matter of Haebler* v. *N. Y. Produce Exchange,* 149 N. Y. 414, 427; *National League of Commission Merchants* v. *Hornung,* 148 App. Div. 355, 361.)

However, the appellant contends that the constitution and by-laws of the respondent association did not provide a tribunal and prescribe the procedure for canceling an advanced registry certificate and that, therefore, the only way that such a certificate can be legally canceled is by a proceeding in a court of competent jurisdiction. We think that subdivision 11 of

rule VI did, when fairly read, provide a tribunal with power to cancel an advanced registry certificate. The subdivision states, clearly, that " the Board of Directors may cancel such acceptance and certificate," and it would seem to be fairly within the meaning of said subdivision to say that the board of directors could, if satisfied that there had been dishonesty or improper practices employed in making any test, cancel the acceptance of the test and the certificate issued thereon. Assume, however, that said subdivision gives the board of directors power to cancel an acceptance and the certificate issued thereon but does not state upon what grounds such acceptance and certificate may be canceled. The result would be the same in the case at bar, where it is charged that the acceptance was signed and the certificate issued as a result of fraud. If the board of directors has authority under any circumstances to cancel an acceptance and certificate, as such by-law says it has, then, clearly, it would have authority to cancel in a case where the acceptance was signed and the certificate was issued upon a fraudulent test and application — upon an alleged test which in fact was no test at all and upon an application which was false and fraudulent.

It is true that the constitution and by-laws of the respondent do not prescribe the procedure to be followed by the board of directors in canceling an advanced registry certificate. The grant of the power to the board of directors carried with it, by necessary implication, the law applicable to the exercise of such power, and the board could exercise such power only in accordance with the law which is read into the grant of the power, as truly and fully as though set out at length. The board can only exercise its power and authority in accordance with the " law of the land " or " by due process of law," which means, in a proceeding to cancel a certificate, that there must be given notice of the proceeding with an opportunity to be heard. (*Williamson* v. *Randolph*, 48 Misc. Rep. 96; *People ex rel. Loughran* v. *Flynn*, 110 App. Div. 279, 291; affd., 184 N. Y. 579.)

In the case of *People ex rel. Meads* v. *McDonough* (8 App. Div. 591) the action was brought to compel the defendant, a fraternal society, to restore the relator to membership, upon the ground that he had been illegally expelled. Mr. Justice

VANN, speaking for the court, said: " The relator was entitled to a fair trial, after due notice, before an impartial tribunal, *and as the method of procedure was not regulated by the laws of the association, it should be analogous to that observed in ordinary judicial proceedings, so far, at least, as to promote substantial justice.*" The court, at Special Term, has defined what shall be deemed " due process of law " upon the hearing before the board of directors; none of the parties have appealed from such determination except the appellant; and he appeals only from the provision that hearsay evidence may be received upon such hearing. Such determination, therefore, provides the procedure for such hearing.

It is urged by the appellant that even though the board of directors, by subdivision 11 of rule VI attempted to establish a tribunal by which the validity of an acceptance of a test and of the certificate issued thereon could be determined, and even though the law supplies the rules of procedure, still said subdivision 11 of rule VI is void and illegal because it is against public policy for the reason that it attempts to deprive the court of jurisdiction by providing that the decision of the board of directors shall be *final.* As we read subdivision 11, it does not provide that the decision of the board of directors shall be final. The words of said subdivision " and in all such matters his decision shall be final " refer to the superintendent and attempt to make his decisions final, but they do not refer to the action of the board of directors. The judgment of the Special Term herein enjoins and restrains the superintendent and all other officers of the respondent from canceling the appellant's certificates except after a hearing conducted by the board of directors and none of the parties herein have appealed from such provision of the judgment. It may be that the provision making the decision of the superintendent final is unreasonable, but that question is not here for determination. If by any construction it can be held that subdivision 11 provides that the decision of the board of directors shall be final, still it does not necessarily follow that such provision makes the whole subdivision illegal or void. (*Burden v. Burden,* 159 N. Y. 287, 303; *Central New York Tel. & Tel. Co. v. Averill,* 199 id. 128, 140.)

It is elementary that a member of an association, like the respondent, against whom proceedings are instituted under its by-laws, must first exhaust his remedies within the association before he can appeal for redress to the courts. (*LaFond* v. *Deems*, 81 N. Y. 507; *Moyse* v. *New York Cotton Exchange*, 143 App. Div. 265; *National League of Commission Merchants* v. *Hornung*, 148 id. 355.) That is true even though the action of the association may result in depriving the member proceeded against of valuable property rights. (*Belton* v. *Hatch*, 109 N. Y. 593; *Matter of Haebler* v. *N. Y. Produce Exchange,* 149 id. 414.)

The Special Term having determined that the appellant as a member of the respondent association was bound by the provisions of subdivision 11 of rule VI, that said subdivision established a proper tribunal for determining the question at issue, that the law imported into the said by-law the legal procedure to be followed by the board of directors, and that, as a member of said association, the appellant was first bound to exhaust his remedy within the association, might well have followed the law as laid down in *Moyse* v. *New York Cotton Exchange* (143 App. Div. 265), and have declined to direct how the proceeding before the board of directors should be conducted. In that case members of the New York Cotton Exchange applied for an injunction to restrain the defendant Cotton Exchange from proceeding to try charges which had been made against the plaintiffs, who were members of the Exchange, a membership association, and, also, if the Exchange be not restrained, then that the method of procedure to be followed on the trial be prescribed and that it be restrained from proceeding in any other way. The court held that an action in equity could not be maintained under such circumstances; that such an action could only be maintained after a decision by the Exchange against the plaintiffs; and that an injunction should not be granted in anticipation of such action. The court also said: "The same rule applies to plaintiffs' demand that the court shall practically take charge of the trial by directing how it must be conducted. Here again we are not called upon to interfere to prevent an injury which is purely anticipatory. A person charged as these plaintiffs are has certain rights which are well settled and generally recognized,

and may claim others which are not so clearly determined. It is the duty of the exchange, in the first instance, to pass upon his claims. If he is given all to which he is entitled he will have no grievance. If he be denied rights which should have been accorded to him, and injury follows, it will then be open to him to seek redress in the courts." The Special Term did, however, upon the written request of the appellant, provide in the judgment herein the mode of procedure to be followed by the board of directors upon the hearing to be held before it. The procedure outlined in the judgment is substantially that requested by the appellant except in one particular, and the appellant does not appeal from that portion of the judgment which outlines the procedure to be followed except in that particular. The trial court provided in said judgment as follows: " according to the plaintiff a fair and impartial trial which, however, does not necessarily confine the Board to the receiving of common law evidence. In case any witness cannot be produced after an explanation is offered the Board may in the exercise of sound discretion receive *ex parte* statements and other hearsay evidence coming from such absent witness. This shall be applicable to all parties appearing. But in all respects any such exercise of discretion shall be subject to the general rule above stated that the hearing shall be fair and impartial." The appellant contends that such provision is illegal. As a matter of fact the question may never arise upon the hearing before the board of directors. No hearsay evidence may be received, and if such evidence is offered and received, we cannot antici-pate in what way or under what circumstances or conditions it may be received. We think the Special Term should not have passed upon that question in advance, and that such provision in the judgment should be stricken out. (*Moyse* v. *New York Cotton Exchange,* 143 App. Div. 265.)

It was contended at the trial and is here urged that the board of directors of the respondent association should be restrained from determining the questions at issue, because said board is illegally constituted and that the members thereof were illegally elected. The Special Term refused to pass upon that question upon the ground that the question was not properly before the court but only collaterally involved.

The Special Term was justified in such holding. Undoubtedly the law in this State remains as stated in the case of *People* v. *Albany & Susquehanna R. R. Co.* (57 N. Y. 161), where it was said: " Elections to office, whether public or corporate, were never in England nor in this State, up to the date of the Code, matters of equitable consideration. They depended only on legal inquiries and legal principles, and no instance can be found in which title to office has been dealt with by the courts or any other basis." The court also held that the Code had not changed the law. (*Wallace* v. *Walsh*, 125 N. Y. 26; *Washington Lighting Co.* v. *Dimmick*, 41 App. Div. 596; *Lewis* v. *Matthews*, 161 id. 107.)

The appellant urges, however, that where a court of equity has acquired jurisdiction of a case upon an equitable ground it should, as incident to such jurisdiction, determine the question as to who is entitled to the office in question, citing as sustaining such proposition the case of *Matter of Dolgeville El. L. & P. Co.* (160 N. Y. 500). That case is not an authority for the proposition. It holds only that in a proceeding under the statute (Code Civ. Proc. §§ 2419, 2422) for the voluntary dissolution of a corporation, the petition must be verified by a majority of the directors in strict pursuance of the statute, and that, if the petition is not verified by a majority of the directors, the court does not acquire jurisdiction. The question arose in a proceeding for the voluntary dissolution of a corporation under sections 2419 and 2422 of the Code of Civil Procedure as it then read (now Gen. Corp. Law, §§ 170, 175) and not in an equity action. We cannot see that the case has any bearing on the question presented here.

All questions raised upon this appeal were properly disposed of by the Special Term except the one question indicated in this opinion. The judgment should be modified by striking out subdivision D of the third adjudicating paragraph thereof, and as so modified affirmed, without costs to either party.

All concur.

Judgment modified in accordance with the opinion and as so modified affirmed, without costs of this appeal to either party.