Stier, J.
This action was brought by plaintiffs Madden, Liddy, Polachek, Sohnen, Friedman and Di Pietrantonio, the first five of whom seek reinstatement and damages because they allegedly were expelled from Local 88, National Organization Masters, Mates and Pilots of America, Inc., without a fair trial' and on charges which did not constitute grounds for expulsion under the constitution and by-laws of either the national organization or Local No. 88. Plaintiff Di Pietrantonio, a member of the national organization, but not a member of Local No. 88, was not expelled, but was refused employment through the shipping lists of Local No. 88. He seeks to compel said local to grant him shipping assignments.
Defendants denied the allegations of the complaint and set up a counterclaim, asking this court to restrain plaintiffs from the use of the name “ American Mariners Association of the National Organization Masters, Mates and Pilots of America, Inc.”
On September 10,1952, plaintiff Sohnen and Dewey Gray and Peter G. Winsen were elected members of the election committee for the election of officers of Local No. 88, to be held at the second meeting in December, 1952. Sohnen was placed in nomination for the election committee by one Hiram A. Taft and plaintiff Liddy. Dewey Gray was placed in nomination by William J. Eummel and plaintiff Polachek. Taft, Liddy, Pummel and Polachek were subsequently nominated for offices in Local No. 88 in opposition to the incumbent officers; Sohnen nominating Taft for the office of secretary-business manager.
After their election the committee, in compliance with the constitution and within the time prescribed therein, caused ballots to be printed and mailed to the membership. Thereafter, plaintiffs Madden, Liddy, Polachek and the other candidates on their slate of officers sent a letter to the election committee, *11 asking it to comply with numerous requests therein contained in connection with the forthcoming election. The election committee thereupon sent a letter to the incumbent secretary-business manager informing him that it had decided to comply with such requests and directed him to do likewise. Upon his refusal to do so, plaintiff Sohnen and Gray, in October, 1952, wrote to the secretary-business manager declaring the ballots and the election void and directing him to advise the membership to that effect. Thereafter, and on or about October 21, 1952, Sohnen and Gray commenced an action in the Supreme Court, New York County, and moved for a temporary injunction to restrain the officers of the union from proceeding with the election and to compel them to comply with their prior requests. The defendants filed a cross motion to dismiss the complaint for failure to state a cause of action. Mr. Justice Matthew M. Levy denied plaintiffs ’ motion for an injunction and granted defendants’ cross motion to dismiss the complaint. (Gray v. Atkins, N. Y. L. J., Jan. 27,1953, p. 296, col. 7.)
During the course of the election printed matter was distributed, attacking defendant Atkins and the candidates running for office with him (hereinafter referred to as the “ Atkins slate ”) who were opposed by Taft and plaintiffs Madden, Liddy and Polachek (hereinafter referred to as the “ Taft slate ”). After the refusal of Sohnen and Gray further to act as members of the election committee, two other members were appointed, pursuant to the authorization of the executive board at its meeting on December 24, 1952, the date of the election. That committee proceeded to conduct the election and the “ Atkins slate ” was declared elected to office.
Subsequently, plaintiffs proceeded to associate themselves under the name: * ‘ American Mariners Association of the National Organization Masters, Mates and Pilots, Inc.” (hereinafter referred to as “ A. M. A.”).
It was after this development that written charges were preferred against the five plaintiffs who were subsequently expelled. The charges preferred against Madden and Liddy at a meeting of Local No. 88 held on February 25, 1953, were identical and read as follows:
“ I hereby prefer charges against * * * for having violated his obligation as a member of Local 88, and of the National Organization Masters, Mates & Pilots of America.
" charge him with being a party to the setting up of a dual union, within the framework of the National Organization Masters, Mates & Pilots of America, calling themselves ‘ Amer *12 ican Mariners Association of the National Organization Masters, Mates and Pilots, AFL.’
"1 charge him being responsible for publicly advertising the ‘ dual union ’ in a paper named the ‘ Labor Leader ’, without the knowledge and consent of the membership of Local 88.
‘ ‘ I charge him with attending unauthorized meetings at times and places other than the regular times and places of meetings of Local 88.
“ I charge him with sending letters and postcards to members of Local 88 inviting them to participate in unauthorized meetings.
" I charge him permitting the attendance at, and participation in such meetings of persons male and female who are not members of the National Organization Masters, Mates & Pilots of America, and of persons who are not members of Local 88.
" I charge him with being a party to the sending out, and distribution of smear sheets during the past election, and of sending out a statement to persons not members of Local 88, and to the National Executive Committee, that they intended to advocate mass withdrawal from the local, dues strike, and dual unionism.
C. J. Atkins 463
A motion was made at the February 25, 1953, meeting to elect a trial committee; the chairman declared that Marshall, Barlow, Goode, Marthey, Scavo, Mitchell and Diaz were nominated. A motion was then made for those members to be elected by acclamation, which was declared carried by voice vote. However, it appeared that it was not unanimous since plaintiff Polachek “ called for a division by a show of hands ” and on that vote the minutes read as follows: ‘ ‘ For Trial Committee — 41 — For; 19 — opposed.” Prior to the dates of trial both Madden and Liddy, who had received the charges preferred against them, addressed letters to Captain Oliver, secretary-business manager, demanding bills of particulars and challenging the composition of the trial committee.
Madden was tried on March 4, 1953, and Liddy, on March 6, 1953. By a vote of four to two, with one member abstaining, the trial committee found Liddy and Madden guilty of the charge of distributing “ smear sheets ” during the prior election, and by a vote of five to two found them guilty of the charge of dual unionism.” The committee recommended expulsion. At the meeting of March 11, 1953, the membership approved these determinations.
*13 At the membership meeting of March 25, 1953, the following written charges were preferred against and given to plaintiffs Sohnen and Polachek:
‘ ‘ I prefer charges against Arthur Sohnen, charging him with conduct unbecoming a member of Local 88, and with violating his obligation as a member of Local 88, and of the National Organization Masters, Mates & Pilots of America, in that:
“ He accepted the nomination to the election committee for the 1952 election then refused to carry out his duties as a member of the election committee, by not conforming to the Constitution and By-Laws of Local 88.
“ He, without just cause, commenced an action whereby he caused the local to defend itself at great expense, by his bringing the local before the Supreme Court of the State of New York, in the case of Gray v Atkins.
“ He conspired with and took orders from the Taft slate, three of whom he nominated, in furtherance of their candidacy.
“ He was a party to the sending out, and distribution, of the smear sheets during the 1952 election.
“ He falsely stated that there was fraud in the election held in 1952 on the part of some officials of Local 88, and participated in having that statement printed in the ‘ Labor Leader ’ put out by ACTU.
“ He deliberately attempted to sabotage the election held in Local 88 in 1952.
“ He is a member of the founding committee of the dual union, calling themselves the ‘ American Mariners Association ’ of the National Organization Masters, Mates & Pilots of America, within Local 88.
“ He attended and participated in unauthorized meetings of this dual union, and acted in concert with persons not members of the National Organization Masters, Mates & Pilots of America, at times and places other than the regular meetings held by Local 88.
" He distributed A. M. A. propaganda circulars while serving as night mate aboard the S.S. ELIZABETH, in defiance of orders from the National Secretary and National President.
“ He did slander Capt. Atkins and Herzer, stating that they obtained their licenses by fraud.
“ He did attempt to create dissension within Local 88, by declaring that the U. S. Lines, Grace Lines, and others would sign contracts with persons not representing the N. O. M. M. & P. of A.
H. Mabtib #14 ”.
*14 “ I prefer charges against Richard J. Polachek, charging him with conduct unbecoming a member of Local 88, and with violating his obligation as a member of Local 88, and of the National Organization Masters, Mates & Pilots of America, in that: He violated the stipulation he signed in 1947, wherein he agreed to conduct himself in accordance with the Constitution and ByLaws, rules and order, of Local 88, National Organization Masters, Mates & Pilots of America, in that: He was a party to the sending out of smear sheets attacking the officials of Local 88.
“ He did swear falsely to an affidavit in a court action against the membership of Local 88, in the case of Gray v Atkins.
“ He was a party to the sending out of a statement to persons not members of the Local, and to members of the National Executive Committee, wherein he advocated mass withdrawal from Local 88, dues strike, and dual unionism.
“ He is a party to the setting up of a dual union, known as the ‘ American Mariners Association ’, of the National Organization Masters, Mates & Pilots of America, acting in concert with non-members of the Organization, in connection therewith within the framework of the National Organization Masters, Mates & Pilots of America, and of Local 88, and attending unauthorized meetings at times and places other than the regular meetings held by Local 88, to promote the ‘ American Mariners Association ’.
‘ ‘ He is inciting the membership to violate their duties as members of Local 88 by joining the ‘ American Mariners Association
H. Martin" #14
A trial committee was then elected at that meeting. Polachek was brought to trial on April 1, 1953, and Sohnen on April 6, 1953. Both were found guilty of the charges and expulsion recommended. At the meeting on April 22, 1953, the membership approved the determination of the trial committee.
At a membership meeting held on May 13, 1953, the following charges were preferred against and given to plaintiff Friedman:
“ May 13,1953
" To the members of Local 88:
“ I hereby charge Brother David L. Friedman with violating his obligation as a member of Local No. 88 and the National Organization Masters, Mates & Pilots of America, in that:
*15 “ He is a member of the dual union known as the ‘ American Mariners Association ’ of the National Organization Masters, Mates & Pilots of America.
“ He is the editor of the paper put out by the AMA ’.
“ He is a party responsible for the distribution of the ‘ AMA ’ paper in front of Local 88’s building at 105 Washington Street, by persons not members of Local 88.
‘ ‘ He is a party responsible for the sending out of the ‘ AMA ’ paper to the home address of certain members of Local 88.
F. Mabshax-l 4481 ”
A trial committee was then elected. On May 20, 1953. Friedman was tried on those charges and found guilty of all except charge No. 4 which accused him of distributing the “AMA paper.” The trial committee voted to expel him. At a meeting held on May 27, 1953, the membership approved the determination of the trial committee.
Prior to their being brought to trial, Polachek, Sohnen and Friedman sent letters to the trial committees, demanding bills of particulars, which were refused.
Madden and Liddy appealed to the executive board of Local No. 88, which affirmed their expulsion. Polachek, Sohnen and Friedman also filed notices of appeal to the same executive board. While their appeals were not heard until after the commencement of this action, they, too, resulted in affirmance. Appeals were not taken either to the national executive board or to the national convention which was held in May, 1954.
It may be well at this point briefly to state the limited power of this court to intervene in the internal affairs of a union. Ordinarily, there may be no intervention until the parties have exhausted the remedies provided by the constitution and by-laws of the organization. (Keller v. Lindelof, 268 App. Div. 877, affd. 294 N. Y. 717, revg. 45 N. Y. S. 2d 523; Cabana v. HolsteinFresian Assn. of Amer., 196 App. Div. 842, 850, affd. 233 N. Y. 644; Rubens v. Weber, 237 App. Div. 15; Moyse v. New York Cotton Exch., 143 App. Div. 265; Matter of Pratt v. Rudisule, 249 App. Div. 305; Cavanagh v. Hutcheson, 140 Misc. 178; Andrews v. Local Union No. 13, 133 Misc. 899; Levy v. Magnolia Lodge, I. O. O. F., 110 Cal. 297.) Our courts have, however, on occasion intervened if the proceedings were not held in accordance with the constitution and by-laws of the organization, or the charges were not substantial, or the offense charged was not in violation of the constitution and by-laws. (Polin v. Kaplan, 257 N. Y. *16 277; Matter of Brown v. Order of Foresters, 176 N. Y. 132; Matter of Pratt v. Rudisule, 249 App. Div. 305, supra; Havens v. King, 221 App. Div. 475, affd. 250 N. Y. 617; People ex rel. Holmstrom v. Independent Dock Builders’ Benevolent Union, 164 App. Div. 267; Bricklayers’, Plasterers’ & Stonemasons’ Union v. Bowen, 183 N. Y. S. 855, affd. 198 App. Div. 967.)
In the case at bar the national constitution provided for an appeal to the national executive committee and to the national convention, which, in this instance, met in May, 1954. The fact that defendant Atkins is national president of the organization and a member of the national executive committee did not relieve thp plaintiffs from the necessity of exhausting their remedy of appeal to the union’s tribunal of last resort. Defendant Atkins was only one member of the national executive committee, and, judging from his action in disqualifying himself from participating in the appeals to the local executive committee, it can hardly be assumed that he would have done otherwise as a member of the national executive committee in hearing the plaintiffs’ appeals. The provision of the national constitution that no more than one member from any district shall hold national office at the same time makes the national executive committee representative of the entire membership. Moreover, since the national convention is composed of delegates from all the locals, it is the most representative forum to hear final appeals. So that even if Atkins had not disqualified himself, it cannot be presumed that he would or could have controlled the entire convention.
The argument that since the convention was not to be held for approximately a year after the affirmance of the expulsion upon the intermediate appeal, and that such lapse of time would have deprived the plaintiffs of valuable property rights, did not excuse plaintiffs’ failure to appeal to the national body as prescribed by the constitution. In Keller v. Lindelof (268 App. Div. 877, affd. 294 N. Y. 717, supra) the convention was not to be held for approximately two years, with valuable property rights also involved, yet the Appellate Division in this Department and our Court of Appeals held that this fact did not in itself excuse the necessity of an appeal to that body.
The trial procedure in the case at bar was in accordance with the constitution and by-laws of Local No. 88. Plaintiffs Liddy and Madden contend, however, that their trial committees were improperly elected. They claim that more than seven members were placed in nomination but that the chair refused to *17 accept all nominations. The constitution and by-laws are silent as to the number to be placed in nomination; the only requirement is that seven members be elected. The minutes of the meeting when the trial committee was elected disclose that after seven members were nominated, a motion was made for their election by acclamation, which the chair announced was carried by voice vote. The proper motion, according to strict parliamentary procedure, would have been a motion to close the nominations. However, we must bear in mind that our courts have repeatedly held that strict legal procedure is not necessary in such situations. (Broohs v. Engar, 259 App. Div. 333.) The motion that was made, therefore, was in the nature of a motion to close nominations. Although it was declared carried by voice vote, the subsequent motion made by plaintiff Polachek shows it was not unanimous, but was carried by a show of hands of forty-one to nineteen. Although plaintiffs claim that the proceedings were governed by “ Roberts Rules of Order ”, a careful reading of both the national and local constitutions fails to support their contention. The only reference to “ Roberts ” is found in rule 15 of the national constitution which expressly is limited to the procedure during the national convention. The wishes of the membership having been expressed at the meeting when the trial committee was elected, it is not within the province of this court to substitute its judgment for theirs.
Plaintiffs Liddy and Madden further contend that Diaz and Mitchell were not among the seven members declared by the chair to have been nominated and elected to the trial committee; that Koch and Dickerson were the ones so declared. This point was raised by plaintiff Polachek at the meeting of March 11, 1953, on an objection to the acceptance of the minutes of the February 25th meeting, when he moved to correct the minutes of that meeting. Those very minutes, however, disclose that a motion to accept them as read was carried and the membership thereby confirmed the election of Diaz and Mitchell to the trial committee.
Plaintiffs and defendants agree that at the meeting of February 25, 1953, there was much noise and confusion, with names being called from various places in the hall. That alone, however, is not a sufficient basis for drawing an inference that the chair discriminated in favor of one faction against another, particularly when the nominations of Groode and Scavo, both members of the “ A. M. A.”, were accepted and they were elected to the trial committee. Furthermore, plaintiffs and *18 their witnesses do not even agree among themselves as to the persons claimed to have been offered for nomination to the trial committee nor the sequence in which the names were placed in nomination. A careful reading of the testimony and the exhibits reveals that Logan, Dowling, Corcoran, Polachek, Goode, Seavo and McLean, claimed by plaintiffs to have been offered in nomination, were members of the “ A. M. A.”; Barlow, Goode and Scavo were elected to the trial committee. Plaintiffs’ complaint thus appears to be that the majority of the trial committee was not composed of members of the “ A. M. A.”, membership in which was-one of the charges made against them. In such a situation, the only course left open to the court is to abide by the will of the majority of the membership.
Plaintiffs also raise the issue that Diaz, Russell and Kilbride were ineligible to serve as members of the respective trial committees to which they were elected. They were not members in good standing as required by the constitution and by-laws since they were in arrears in the payment of dues. Thus, one member of each of the respective seven-member trial committees was not a member in good standing. The constitution, however, provides that ‘ ‘ a trial committee of seven full members in good standing shall be elected, five of whom shall constitute a quorum.'’’ (Emphasis supplied.)
Plaintiffs Liddy and Madden have likewise failed to establish that the tally of the vote at the membership meeting of March 11, 1953, was inaccurate. The only proof adduced, aside from argument which is not persuasive, is that no vote of probationary members was counted. The refusal to permit the attendance at that meeting of members not in good standing was in keeping with the constitution.
The minutes of the Liddy and Madden trials are barren of any testimony concerning the distribution of the alleged “ Smear Sheets ”. The defendants, however, produced the reporter at those proceedings who testified that, because of the confusion and disorder during those trial proceedings, she was unable to take down all the testimony. Under these circumstances, testimony was permitted on this point at the trial of this action, the witnesses testifying that was their testimony at the union trials. Thus, some testimony on this point was presented to the trial committee for whose judgment this court is powerless to substitute its own.
The denial of plaintiffs’ request for a bill of particulars is no ground for nullifying the trial proceedings. In Brooks v. *19 Engar (259 App. Div. 333, supra) it was held that formal legal procedure is not required in connection with explusion proceedings and in Austin v. Dutcher (56 App. Div. 393, 397) the court appositely stated: “ The constitution gave him no right to such an adjournment or to specifications or a bill of particulars. The charges that were actually made by a member were served upon the plaintiff, and that was all that the constitution required. * * * Whether or not the charges were sufficiently specific to call for a defense was a question for the association itself to determine.”
One of the charges preferred against all the five plaintiffs who were expelled was their participation and membership in the association which they called the American Mariners Association of the National Organization Masters, Mates and Pilots, Inc. All of these plaintiffs freely admitted membership in this association. Neither the national nor Local No. 88 constitution contains any provisions proscribing the formation of associations within the locals of the national organization. However, as stated by the Court of Appeals in Polin v. Kaplan (257 N. Y. 277, 282-283, supra): “ in every contract of association there inheres a term binding members to loyal support of the society in the attainment of its proper purposes, and that for a gross breach of this obligation the power of expulsion is impliedly conferred upon the association. It has been said by the Supreme Court of California that an association may expel a member upon one of two grounds, viz.: ‘ 1. A violation of such of the established rules of the association as have been subscribed or assented to by the members, and as provide expulsion for such violation. 2. For such conduct as clearly violates the fundamental objects of the association, and if persisted in and allowed would thwart those objects or bring the association into disrepute.’ (Otto v. Journeymen Tailors’ P. & B. Union, 75 Cal. 308, 314.) * * * We subscribe to these views.”
The charges preferred refer to the “ A.M.A.” as a dual union. The first instance of a charge of duality in unions of which this court has any knowledge was that which arose with the formation of the C.I.O. in about the year 1934. Several A.F.L. unions disagreed with the policy of the A.F.L. and proceeded to form a “ Committee for Industrial Organization ” within the A.F.L., to promote organization of workers in mass production industries and to encourage their affiliation with A.F.L. The executive council of the A.F.L. characterized the activities of the committee as “ dual ” to the A.F.L., and upon the refusal to
*20 disband that committee those unions were suspended from the A.F.L.
This court can find no authoritative definition of the term “ dual union.” The two words are contradictory of each other; “ dual ” signifying a division into two separate entities, “ union ” denoting a coalescence, uniting or joining together of elements that were previously separate or several. Such division or duality would, therefore, appear to be inimical to the basic purposes of trade unionism. Such internal division would impair the collective strength which a union must have to attain its lawful purposes in its dealings and negotiations with employers. Plaintiffs, however, argue that the purpose of their association is to promote the best interests of the membership by advocating reforms. They draw an analogy between their association and a two-party political system. If that is their primary purpose, no one can have just cause for complaint. It should be observed, however, that even in a political party, the goal is unity and a division of the membership of that party into opposing factions tends to weaken the organization itself. The only justification for such a division is that it is for the ultimate benefit of the organization. That question is for the organization itself to determine upon facts presented from which such conclusion may be drawn. In McConville v. Milk Wagon Drivers’ Union (106 Cal. App. 696, 698), the court stated this principle as follows: 1 ‘ Furthermore, it is held generally that with respect to the merits of the charges which have resulted in suspension or expulsion of the member the province of the court is restricted to the ascertainment of whether there was cmy evidence whatever before the union to support its conclusion, and that it may not consider the weight of such evidence, nor substitute its judgment thereon for the judgment of the tribunal before whom the member was tried (Martin’s Modern Law of Labor Unions, p. 393; Fritz v. Knaub, 57 Misc. Rep. 405).” (Emphasis supplied.)
In determining whether there was “ any evidence whatever ” to sustain the conclusion of the union that the “ A.M.A.” was inimical to its legitimate interest, this court’s consideration as outlined below, encompasses not only the actions of the members of the “ A.M.A.” but the conduct and background of its leaders as well.
The election committee elected and controlled by plaintiffs and their associates, in furtherance of the candidacy of the members of their group, assumed powers which were not *21 granted to them by the constitution, and presumed to declare invalid not only the election ballots previously prepared and mailed by them to the membership, but also the election itself. Such conduct by plaintiffs could possibly have created a chaotic condition within the union, raising serious questions as to the constitutionality of a subsequent election which was not therein provided for, and, with contract negotiations with employers pending, may have raised serious questions as to the rights of the officers to continue their negotiations. The membership and the trial committee obviously felt that such action was detrimental to the best interests of the union.
Meetings of the ‘ ‘ A.M.A. ’ ’ were conducted, admittedly, with some persons in attendance who were not members of the union. The paper called True Course,” published by plaintiffs contained continued attacks upon defendant Atkins, charging him with gross malfeasance in office and willful breach and disregard of benefits due members under existing contracts with employers.
Personal attacks upon fellow members, though not to be condoned, would not ordinarily be cause for expulsion. However, where they are bitter and continued, they may tend to impair the confidence of the members in the union itself. If so, then the membership could well find that such conduct was detrimental to their union. The proper and orderly procedure, if these plaintiffs had any proof to support their charges, would have been to present it to the membership in the manner provided by the constitution so that the members could, after a full consideration of the facts, make their determination and, if those charges were substantiated, take proper action to protect their organization.
In addition, their publication “ True Course ” supported a merger of this union with M.E.B.A. — a C.I.O. affiliate — even to the extent of giving up this union’s A.F.L. charter for a charter from the C.I.O. (Exhibits F-5, F-9, F-10, F-12.) The advocacy of such action could raise possible charges of disloyalty to the A.F.L. and subject the membership to possible disciplinary action from the A.F.L. Furthermore, articles published in “ True Course ” appear to advocate a merger or an alliance of all unions engaged in the shipping industry. This resembles the movement in 1946, in which Harry Bridges was one of the foremost proponents and instigators, called the “ Committee for Maritime Unity.” This movement was principally composed of C.I.O. unions which the A.F.L. unions refused to join. The plaintiff Polachek was one of the active *22 proponents of the C.M.U. within this union, resulting in bitter internal strife, and which was the basis of prior charges preferred against him by Local No. 88.
Plaintiff Polachek, according to the testimony at this trial, and by his own signed statement in 1947, admitted participation in and support of the C.M.U. as follows (Exhibits Q, B):
“ 1. The organization in May, 1946, of a self-styled ‘ Bank and File Committee ’ without the approval of Local No. 88 or the membership thereof and in violation of the accepted rules and procedure of said Local.
“ 2. The publication, financing and distribution over a period of several months of a newspaper called ‘ The Barometer ’ purported to have been published ‘ by and for the rank and file ’, i. e., the general membership of Local No. 88, and the solicitation of financial support therefor.
“ 3. The support of the principles and purposes of the Committee of Maritime Unity and the endeavor to cause the National Organization, Masters, Mates and Pilots to become affiliated therewith.
"4. The preparation and distribution of handbills and circulars promoting the cause of the Committee of Maritime Unity and containing criticism of the officials of Local No. 88 and of the Strike Committee of said Local, which criticism was unfounded and untrue.
“ 5. The conduct and attendance at unauthorized meetings sponsored by the said Bank and File Committee at times and places other than the regular times and places of meetings of Local No. 88.” A reading of this exhibit is enlightening since the actions of plaintiffs in this case bear a striking similarity to those of 1946.
The evidence further discloses the following concerning the background of other members of this group.
Plaintiff Sohnen admitted prior membership in the Communist party, but he testified that he had given up such membership. Defendants, however, produced a witness who testified that, after the date Sohnen claimed to have severed his Communist party affiliations, he was a shipmate of Sohnen aboard a vessel which sailed to a port in a country with a communist regime and that while in that port Sohnen was in close association with Communist party officials.
Mr. Taft, not a plaintiff in this action, who was a candidate for secretary-business manager of the union, the only salaried office and an important one in the union, formed an independent *23 union in opposition to Local No. 88 after being defeated for election. The plaintiffs testified that they regarded him as incompetent to hold that office, but nevertheless advocated his election.
The foregoing constituted, in the opinion of this court, some evidence supporting the conclusion of the trial committee. Consequently, this court may not substitute its judgment. (McConville v. Milk Wagon Drivers’ Union, 106 Cal. App. 696, supra; Polin v. Kaplan, 257 N. Y. 277, supra.)
In light of all of the foregoing, the complaint of the plaintiffs other than Di Pietrantonio is dismissed on its merits, without costs.
The plaintiff Di Pietrantonio was not a member of Local No, 88, but a member of another local chartered by the national organization. There were no charges preferred against him by any member of Local No. 88, but in this trial and in the union trials of the other plaintiffs there was testimony concerning his activities in connection with the “ A.M.A.” This plaintiff was refused any further employment through Local No. 88. However, there are no provisions either in the national constitution or in the constitution of said local with respect to the right of a worker to obtain employment through a local, of which he is not a member, and this plaintiff adduced no proof to show that he had such a right. Under these circumstances, this court can grant him no relief, and his complaint must be dismissed, but without costs.
With respect to the defendants’ counterclaim, the name used by the plaintiffs is misleading and lends itself to the misconception that it is a duly chartered local of the national organization or a branch of a duly chartered local. It is thus violative of article II of the national constitution and defendants are entitled to the injunctive relief they seek in their counterclaim.
Settle judgment on two days’ notice.