In the Matter of the Application of THE IMPORTERS AND EXPORTERS INSURANCE COMPANY, on Behalf of Itself and Other Fire Insurance Companies, Appellant, for a Peremptory Order of Mandamus against SUMNER RHOADES, as Treasurer of the NEW YORK FIRE INSURANCE RATING ORGANIZATION, Respondent.

**Insurance (fire) — rating organizations — ru'es must be lawful, proper and within scope of statutory authority — such organizations without authority to require as condition to rendition of service, subscription to rules regulating commissions, brokerages and number of agencies.**

By sections 141, 141-a and 141-b of the Insurance Law (Cons. Laws, ch. 28), regulating organizations "for the purpose of suggesting, approving or making rates for fire insurance," and providing that every such rating organization " shall admit to membership or shall furnish its service without discrimination to any person, association or corporation authorized to transact the business of fire insurance within this state, applying therefor," the power of such an organization to make rules is limited to " rules affecting such rates and charges of the rating organization " or " rules  *  *  * employed in computing the rates." Such an organization, therefore, may not refuse to furnish its service to an eligible, because it refused to agree to maintain and observe rules of the rating organization not only as to the rules employed in making rates, but also as to commissions, brokerages and number of agencies. The rules of the rating organi-

zation must be lawful, proper and within the scope of the authority granted and there is nothing in the statute to warrant the far-reaching power which it assumed to exercise.

*Matter of Importers & Exporters Ins. Co.* v. *Rhoades,* 209 App. Div. 689, reversed.

(Argued January 22, 1925; decided February 3, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 2, 1924, which reversed an order of Special Term granting a motion for a peremptory order of mandamus to compel defendant to accept the petitioner and others as subscribers to the service of the New York Fire Insurance Rating Organization and denied said motion.

*Nathan L. Miller* and *William F. Unger* for appellant. The statute enjoins a positive duty. The respondent cannot impose the terms and conditions on which it will perform that duty. (*N. W. Nat. Ins. Co.* v. *Fishback,* 228 Pac. Rep. 516.) The rules complained of are illegal and the Legislature, even if it sought to do so, would not have the power to authorize rating organizations to pass them. A construction of chapter 660 of the Laws of 1922, which would give rating organizations such powers, would render the statute unconstitutional and should, therefore, not be adopted. (*N. W. Nat. Ins. Co.* v. *Fishback,* 228 Pac. Rep. 516; *Comm. ex rel. Bell* v. *Allemania F. Ins. Co.,* 61 Pittsburg L. J. 225, 337; *Huston* v. *Rentlinger,* 91 Ky. 333; *People ex rel. McIlhany* v. *Chicago L. S. Exchange,* 170 Ill. 556; *Wolff Co.* v. *Industrial Court,* 262 U. S. 522; *Adkins* v. *Children's Hospital,* 261 U. S. 525.)

*David Rumsey* and *Louis J. Wolff* for respondent. Upon the merits the appellant is not entitled to any order of mandamus against the respondent. (1 Joyce on Ins. [2d ed.] 768; *Queen Ins. Co.* v. *State,* 86 Tex. 250; *People ex rel. City of New York* v. *Queens Co. Water Co.,* 232 N. Y. 277; *People ex rel. Hiegel* v. *N. Y. Tel. Co.,*

119 Misc. Rep. 61; *Matter of Weidenfeld* v. *Keppler*, 84 App. Div. 235; 176 N. Y. 562; *Simons* v. *Berry*, 210 App. Div. 90; *People ex rel. Solomon* v. *Brotherhood of Painters*, 218 N. Y. 115; *People ex rel. Schults* v. *Love*, 199 App. Div. 815; *Meinhart* v. *Contresta*, 194 N. Y. Supp. 593; *Doyle* v. *Burke*, 29 R. I. 123; *Rogers* v. *Tangier Temple*, 198 N. W. Rep. 873; *Mayer* v. *Journeymen Stone Cutters Assn.*, 47 N. J. Eq. 519; *Coppage* v. *Kansas*, 236 U. S. 1.)

Pound, J. The only question herein, as appears by the opinion below and the argument on appeal, is whether appellant, a corporation authorized to transact the business of fire insurance within this State, is entitled as matter of law to the service of the New York Fire Insurance Rating Organization. Has it a substantial statutory right to avail itself of such services which has been denied without just legal cause? The question is properly here. (*People ex rel. Flynn* v. *Woods*, 218 N. Y. 124; *Matter of Weidenfeld*, 176 N. Y. 562.) The rating organization is organized under chapter 660 of the Laws of 1922, which amended section 141 of the Insurance Law and added thereto sections 141-a and 141-b. These sections provide for and regulate organizations "for the purpose of suggesting, approving or making rates for fire insurance upon risks within this State" and is the only such organization within the State. The term " rate " as used in these sections includes " all the elements and factors forming the basis of computing the consideration for insurance." (§ 141, p. 1.) The law provides that " the schedules, rules and methods employed in computing the rates charged for fire insurance shall be reasonable." It further provides that every such rating organization " shall admit to membership or shall furnish its service without discrimination to any person, association or corporation authorized to transact the business of fire insurance within this State, applying therefor." The rating plan

and list of insurance companies represented by the rating organization must be filed with the Superintendent of Insurance. The purpose of a rating organization is to compute uniform standard non-discriminatory rates for fire insurance upon all classes of risks written by its members. It is fairly stated in paragraph 2 of section 141-a of the law which reads as follows:

"Every such rating organization shall apply minimum class rates, formally adopted, to all risks within this State rated by such organization for fire insurance, or after an inspection of a risk, fix and promulgate specific rates therefor which rates shall be based upon schedules formally adopted by such rating organization for the various classes of risks rated by it and filed with the Superintendent of Insurance, except where the class of risks or the local conditions may in the opinion of the Superintendent of Insurance justify flat or non-schedule ratings. Every such rating organization shall make an inspection of every such risk which is separately or specifically rated and shall make a written survey thereof which shall be filed as a permanent record in the office of such organization."

Its power to make rules is limited by the statute to " rules affecting such rates and charges of the rating organization " or " rules * * * employed in computing the rates " and its members must comply with such rules and fix their rates accordingly except that a yearly higher or lower rate may be fixed pursuant to section 141-a, paragraph 3. But the Superintendent of Insurance may remove discriminations and adjust improper rates.

The rating organization is a development of insurance arising out of the difficulties of rate making based on the experience of a single company. The purpose of the law is to give all corporations authorized to transact the business of fire insurance in this State the privilege of membership in such an organization. The privilege is a

valuable one. Both as a matter of range of experience and of expense it is impracticable for one company to maintain a rating organization.

The Merritt Legislative Report (Report, Merritt Com. Assembly Doc. 1911, p. 40) says " * * * the practical result (of the difficulty of the problem of rating) is that it is impossible to make rates properly on the basis of a single company's experience. The experience even of the largest companies is not extensive enough to insure the proper working of the law of averages on all classes. It is very natural then, and from this point of view desirable, that the companies should for this purpose, combine; for not only can they thus make rates more effectively, but since rates on the same classes are needed by all, it would be a useless expense to have the work duplicated."

The Lockwood Legislative Report (Report Housing Committee, Legislative Document, 1922, p. 224) says: " Rate-making upon the endless items of property that enter into the insurance business is exceedingly difficult and expensive. It requires a large organization and expert knowledge and experience. No single company, however large, can afford to make rates for itself alone. That and the fact that the business was one peculiarly affected with a public trust, have always been the burden of the arguments advanced by the insurance companies for being permitted to combine in these rate-making bodies. Refusal of access to the rates virtually means exclusion of the company from competition."

The respondent, as an incident to its rule making power, refuses to furnish its service to appellant unless it will agree to the terms imposed on members signatory to its membership agreement and maintain and observe rules of the rating organization not only as to the rules employed in making rates but also as to commissions, brokerages and number of agencies. Appellant refuses to sign an agreement to be bound by such rules, for the reason that

it desires the benefit of the rating organization without assenting to the control of its business methods thereby. It has been held below that commissions, brokerages and number of agencies are so intimately allied with the general scheme of " making rates for fire insurance upon risks within the State " as to be an integral part thereof; that the rule to be employed in computing a rate essentially depends on the net return to the company. The rates, however, are the charges to be made by the insurer to the insured for fire insurance. Information as to the net returns to the companies on the insurance written by them may be an essential element of scientific rate fixing. The amounts paid for premiums as divided between the insurance company and agents and brokers have a direct connection with the rate itself. It may well be that voluntary rating associations have in the past been controlling such subjects. But the distinction is obvious between a rating association existing under the statute and one existing solely by agreement of members. The latter may pick and choose; the former must furnish its service to any corporation authorized to transact the business of fire insurance within the State which agrees to be bound by the rules affecting rates to be paid for insurance. The latter may extend the scope of its rules according to its own will. The former may not exclude eligibles by adopting rules which go beyond the fixing of rates to be charged by the companies. Information as to the amounts allowed for commissions and brokerage may be valuable. The fixing of such sums by the rating commission is another matter. A combination of companies to fix rates without express authority may be of questionable legality. Respondent exists by virtue of law.

We must read into the act a legislative purpose indirectly but effectively to limit commissions in fire insurance as it has in life insurance (Insurance Law [Cons. Laws, ch. 28], § 97) in order to uphold the power of the

rating organization to regulate these matters. It is no answer to say that the companies are not bound to seek the services of a rating organization and may act independently of it. They may do so only at a disadvantage which the law does not contemplate. If the rating organization is in effect to be clothed with the revolutionary attributes of a State agency to regulate commissions, the legislative authority should be explicit in terms and the court should not smuggle such a grant into the law under the guise of liberal construction.

The question is not altogether one of discrimination, although the learned justice at Special Term properly says that the rule in controversy constitutes an illegal discrimination against those companies which, claiming the right to service under the statute, prefer to run their business in a different way than that made mandatory on members. If such companies have the right to the service of the rating organization the plea of equality and fairness in matters *ultra vires* the organization should not prevail. (*People ex rel. N. Y. F. Ins. Exch.* v. *Phillips*, 237 N. Y. 167.) The question is one of the statutory power of the rating organization to make rules. If we assume that the Legislature, if it had seen fit to do so, might have included in its grant of power to regulate rates the further power as a condition of service to regulate agents' and brokers' commissions, the next logical step would be to include, limit and regulate as factors in rate making all expenses of the insurance companies, such as salaries and office expenses. The question would then arise whether such a delegation of legislative power was for the benefit and protection of the public (*German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389) or whether it interfered with the right of fire insurance companies to regulate their own business in regard to agents' and brokers' commissions, and the number of agencies they should establish, and other matters of internal management,— a question which we need not consider at this

time. (*N. W. Nat. Ins. Co.* v. *Fishback*, 228 Pac. Rep. 516.)

The rules of the rating organization must be lawful, proper and within the scope of the authority granted. By this test, we fail to find in the statute the far-reaching power which the respondent assumes to exercise. If the language of the statute does not reach the case, the court has no jurisdiction to enlarge its scope beyond what the Legislature has permitted. The rule of equity and fairness to all entitled to the benefits of the rating organization is found in the statute. It may not be made more irksome than the Legislature has made it, even though all are treated alike.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., CARDOZO, CRANE and ANDREWS, JJ., concur; LEHMAN, J., not sitting; McLAUGHLIN, J., absent.

Order reversed, etc.