THE BUFFALO ASSOCIATION OF FIRE UNDERWRITERS, Plaintiff, v. NOXSEL-DIMICK COMPANY, Defendant.

Supreme Court, Erie County, September —, 1931.

*Donovan & Raichle [Carlos C. Alden* of counsel], for the plaintiff.

*Killeen & Sweeney [Francis J. Maloney* of counsel], for the defendant.

NORTON, J.   The plaintiff is a membership corporation created by special act of the Legislature (Laws of 1881, chap. 668), its purposes, as stated in such law, being " to inculcate just and equitable principles in the business of insurance; to establish and maintain uniformity among its members, in policies or contracts of insurance, and to acquire, preserve and disseminate valuable information relative to the business in which they are engaged."   It was authorized by such law " to make all needful by-laws not contrary to the provisions of this act or the constitution and laws of this state, or of the United States."

The defendant is a domestic corporation, organized in 1909, engaged in Buffalo, N. Y., since its incorporation in the general insurance business, including the writing, as agent, of fire insurance on risks in Buffalo and vicinity.   Following its incorporation, and in July, 1909, defendant joined plaintiff association and has continuously been a member ever since.   Under contracts made prior to July, 1929, by defendant, it represents, as agent, the seven

fire insurance companies named in the answer and referred to in the complaint; all of which companies are authorized to do a fire insurance business in the State of New York.

At the time defendant applied to become and became a member of plaintiff association the by-laws thereof contained the following provision: " Each member of this Association by accepting his membership agrees to be governed by the Constitution and By-laws, and all the rules and regulations of this Association and any amendments thereto which may be hereafter adopted, and any and all By-laws and amendments thereto now in force, or which may hereafter be adopted by this Association, and that he will make no deviation therefrom, either in letter or spirit."

In 1919 plaintiff association duly adopted the following by-laws; and the defendant, represented by its president, duly voted in favor thereof, viz.:

### " Non-Association Companies.

" No member shall represent any company (or any of its branches or subsidiaries) all of whose local agents engaged in the fire insurance business are not members of this Association.

### " Intercourse with Non-members.

" In the placing of business outside their respective offices members must invariably prefer their fellow members in the Association and the companies they represent, but after exhausting these resources they may secure policies of non-members and outside companies reporting, however, each such transaction in writing to the manager. No member shall furnish any information to a non-member concerning the business, rates, rules or schedules of the Association.

### " Brokers.

" Members of the Association are prohibited from accepting business from, or paying commission to any individual, firm or corporation, unless such individual, firm or corporation holds, either a Class ' A ' or Class ' B ' brokers certificate from this Association.

### " Membership.

" The Association shall determine the qualifications for membership and shall judge as to the eligibility of applicants. Membership in this Association is a personal privilege to be enjoyed by those admitted thereto only during such time as they remain qualified therefor and abide by the membership agreement.

## " Membership Pledge.

" The following membership pledge must be signed by each member; when membership is vested in a firm the agreement must be signed in the firm name and by each individual member of such firm; and when membership is vested in a corporation by its president and secretary, under its seal and by each stockholder of such corporation.

" I hereby agree to abide by, observe and uphold the act of incorporation, by-laws, rules, regulations, tariffs and rates of the Buffalo Association of Fire Underwriters as now, or hereafter made, and to enforce compliance therewith by all other members of the Association and by all agents, brokers, employees or others under my jurisdiction or control.

" I agree that my membership is a privilege dependent upon my observance of the constitution and all by-laws, rules, regulations, tariffs and rates of said Association, and that it terminates by my failure to observe and maintain same.

" I agree to pay all dues and assessments of said Association up to the date of termination of my membership.

" In the event of termination of my membership I agree to return to the Association rate cabinets and all other property owned by it.

" I agree to submit all my books and records for examination by the Association or any duly authorized representative thereof whenever called upon so to do.

" I agree to maintain my deposit in the Forfeit Fund, as required by the Association."

July 3, 1929, the plaintiff association duly adopted the following by-laws. The defendant, represented by both its president and secretary, duly voted against their adoption, viz.:

## " Article Sixteen

" Sec. 1. All members of this Association are bound by the conditions of the Agency Agreements adopted by the Association, and no member shall receive or accept, directly or indirectly, a higher rate of commission, nor other valuable consideration than is provided in said Agreements."

## " Membership Agreement and Pledge.

' Sec. 11. The following Membership Agreement and Pledge must be signed by each member; when membership is vested in a firm, the agreement and pledge must be signed in the firm name and by each individual member of such firm; and when membership

is vested in a corporation, by its President and Secretary under its seal, and by each stockholder of such corporation.

" Sec. 12. I hereby agree to abide by, observe and uphold the act of incorporation, By-Laws, Rules and Regulations and Standards of the Buffalo Association of Fire Underwriters as now or hereafter made, and assist in enforcing compliance therewith by all other members of the Association and by all agents, brokers, employees or others under my jurisdiction or control.

" Sec. 13. I agree that my membership is a privilege dependent upon my observance of the Constitution and all By-Laws, Rules and Regulations and Standards of said Association, and that it may be terminated by my failure to observe and maintain same.

" Sec. 14. I agree that as a member of this Association I shall be bound to observe and maintain all rates, rules and forms promulgated by the New York Fire Insurance Rating Organization, which are filed with the Insurance Department of the State of New York."

" ARTICLE TWO.
" MEMBERSHIP.

" Sec. 1. The Association shall determine the qualifications for membership and shall judge as to the eligibility of applicants. Membership in this Association is a personal privilege to be enjoyed by those admitted thereto only during such time as they remain qualified therefor and abide by the Membership Agreement and Pledge."

" ARTICLE TWELVE.
" COMPANY REPRESENTATION.
" NON-ASSOCIATION COMPANIES.

" Sec. 1. No member shall represent any company (or any of its subsidary or affiliated or associated companies) any of whose local agents engaged in fire insurance business are not members of this Association."

" ARTICLE NINE.
" NON- INTERCOURSE.

" Sec. 1. Members are not permitted to transact a fire insurance business with agents who are not members of this Association, whether a brokerage commission be allowed or not, except as provided in the following section."

Under " Article Sixteen " of the by-laws, above quoted, members of plaintiff association are required and bound to comply with the agency agreements adopted by plaintiff association. Such " Agency Agreement " in substance is the agreement which the fire insurance companies composing the Eastern Underwriters Association make

with their agents. The Eastern Underwriters Association is composed of most of the larger fire insurance companies doing business in the New England and Central States, which association companies write a substantial part of the total fire insurance placed within the territory of the plaintiff association.

In December, 1927, the plaintiff association adopted for its territory and members such " Agency Agreements " and they have applied, with a slight change, made in January, 1929, to its territory and its members, ever since. However, there was no definite provision in the by-laws or rules of plaintiff association requiring its members to comply with such " Agency Agreements," until the adoption on July 3, 1929, of " Article Sixteen " of the by-laws, above quoted.

There are a substantial number of fire insurance companies, doing a substantial volume of fire insurance business in the territory of the plaintiff, which are not members of the Eastern Underwriters Association, each of which is of smaller capital and resources than any of the companies affiliated with the Eastern Underwriters Association, but all such unaffiliated companies are authorized to do business in the State of New York and so are presumably good sound companies. All or nearly all of such unaffiliated companies pay to their agents a greater percentage of the premiums on the policies of insurance which such agents write than are paid by the affiliated companies, and thus more than is allowed by the said " Agency Agreements."

Defendant is the agent of seven of the unaffiliated companies, each of which companies pays defendant a higher commission, viz., a greater percentage of the premiums on the policies it places with such company, than the affiliated companies pay their agents, under the provisions of such " Agency Agreements." Thus admittedly defendant violates the plaintiff's by-laws.

Defendant's agency contract with each of said seven unaffiliated companies was made prior to July 3, 1929, the date of the adoption by plaintiff of such article 16 of its by-laws. These contracts are informal, some oral, some partly oral, partly in writing; but all fixing a higher commission for defendant than is permissible under the " Agency Agreements." Five of such contracts fix no definite term for defendant's agency; some are terminable on thirty days' notice by either party, others make no provision for termination. Two of such contracts are in writing and are for a term of ten years; they were both made in May, 1928, and hence will not terminate until May, 1938; but the provision for the ten years' term as to one, the American Colony Insurance Company, was added to the original contract of agency by a supplementary

agreement made by the parties September 30, 1929; and the provision as to the ten years' term as to the other, the Mohawk Fire Insurance Company, was added to the original contract of agency by a so-called " agreement of revisal " made by the parties May 18, 1929.

Both parties seek a judgment declaring whether such by-law, article 16, section 1, adopted July 3, 1929, is valid and enforcible, and may be applied to and enforced against the defendant without violation of any of defendant's vested rights and privileges; in other words, whether the plaintiff association may regulate the rate of commissions that defendant as a member of plaintiff association may contract for and receive from the fire insurance companies it represents as agent.

And defendant in its counterclaim seeks a judgment declaring the validity or invalidity: (1) Of the by-laws of plaintiff association which prohibit its members from representing any fire insurance company all of whose local agents are not members of plaintiff association; and (2) of the by-laws of plaintiff association which forbid its members from transacting fire insurance business with insurance agents who are not members of the plaintiff association.

The questions presented herein for adjudication and declaration are real and of great moment to the parties.

If plaintiff may not prescribe the maximum rate of commissions its members may receive from their principals, and the class of companies its members may not represent, and the class of other insurance agents its members may not transact business with, there is little now left for plaintiff to do and slight purpose in its continued existence.

If defendant must forego the increased commissions it is receiving from the seven unaffiliated companies it represents, or in lieu thereof lose its membership in plaintiff association and be thereby foreclosed from doing any fire insurance business with those who continue to be members thereof, it stands to suffer substantial loss; if it may not represent such class of companies as it may choose, and may not do business with such class of insurance agents as may offer it or accept its business, without losing such membership, then it must either give up a considerable source of revenue or give up its membership in plaintiff, with all the loss that may entail.

Defendant contends: That plaintiff has no power nor authority by general law nor under its act of incorporation to adopt or enforce the by-laws in question; and that they are contrary to common right and void; that, as to defendant, besides their general appli-

cation, such by-laws impinge upon contracts existing at the time of their adoption and they are, therefore, void as to defendant; that membership in plaintiff association is a right and not a privilege; therefore, the membership pledge is invalid; that the by-laws which prohibit members from representing companies that give or pay to their agents a greater percentage of the premiums on the policies they write than the plaintiff considers safe or proper insurance practice, and the by-laws which prohibit members from transacting insurance business with other agents who represent such companies, are in restraint of trade and are restraints upon the freedom to contract, imposed on the members of plaintiff, is plain.

But membership in plaintiff association is not compulsory; defendant is free to withdraw at any time. It did and does not have to take the pledge which plaintiff requires of its members, and may relieve itself therefrom by ceasing to be a member when it chooses so to do. Under both the law and custom plaintiff, although incorporated, being a voluntary association, was vested with the right and power to determine who could become members thereof, and under what conditions, and subject to what obligations. (Membership Corp. Law of 1926 § 20, and the laws revised and superseded thereby.)

Plaintiff may within legal limitations prescribe the terms and conditions upon which an applicant can become a member thereof. No one is under constraint to become, nor under restraint to cease to be a member. Defendant was under no obligation to join plaintiff association; it is under no obligation to remain a member thereof.

The defendant by joining plaintiff association accepted and agreed to abide by its by-laws and the duly adopted amendments thereto. The by-laws then became and now are the contract between defendant and plaintiff.

The Court of Appeals states the law that applies to the situation herein in the following language in *Matter of Haebler* v. *N. Y. Produce Exch.* (149 N. Y. 414, at p. 427): " The by-laws * * * were in existence when the relator became a member of the association, and he expressly agreed * * * and be controlled thereby. The relator had a right to become a member of this corporation, and to agree to be governed by its charter and by-laws, and when he did so they expressed the contract by which he and every other member were bound, and which measured their rights, duties and liabilities as members thereof. (*Weston* v. *Ives*, 97 N. Y. 222; *Belton* v. *Hatch*, 109 N. Y. 593; *O'Brien* v. *Grant*, 146 N. Y. 163, 173.) "

The same principle is even more tersely applied in *National League of Commission Merchants* v. *Hornung* (148 App. Div. 355, at p. 361) as follows: " When the defendant became a member of the plaintiff [a membership corporation] he agreed to abide by its constitution and by-laws, which defined his relations to the organization, and was the contract by which he was to be bound." (Citing the above cases and *Bachmann* v. *New Yorker Deutcher Arbiter Bund*, 64 How. Pr. 442.)

The law is thus summed up in the syllabus of *Cabana* v. *Holstein-Friesian Association* (196 App. Div. 842): " A member of a membership corporation makes the by-laws thereof a part of his contract of membership and becomes bound by them."

In *People* v. *Holstein-Friesian Association* (41 Hun, 439) it was definitely held that neither the public nor any member of the public had any right to membership in a membership corporation.

The cases of *People ex rel. Gray* v. *Med. Soc. of Erie Co.* (24 Barb. 570); *Ewald* v. *Med. Soc. of County of N. Y.* (70 Misc. 615) are not in point. They relate to medical societies.

"Every licensed physician and surgeon of good character and having the necessary qualifications was entitled to membership [in a medical society], citing *People ex rel. Bartlett* v. *Medical Society*, 32 N. Y. 187)." (Quoted from *Ewald* v. *Med. Soc. of Co. of N. Y.*, 144 App. Div. 82, p. 88, which decision reversed the decision, reported, 70 Misc. 615, cited by defendant.)

I am of the opinion that defendant had no right to become a member of plaintiff association; that membership thereof is a privilege; and a member has no right to remain a member except on the same terms and subject to the same conditions that all other members thereof accept, subscribe to and comply with, viz., the by-laws and the pledge therein required, to be taken and given by all members.

Defendant urges that membership in plaintiff association is a matter of right; that plaintiff may not " pick and choose " its members. (Citing in support of such position *Matter of Importers & Exporters Ins. Co.* v. *Rhoades*, 239 N. Y. 420.)

That plaintiff may " pick and choose " its members is clear; else why the provision in the by-laws, article 2, section 19, for election to membership by four-fifths affirmative vote of the members present at the meeting the applicant is voted on, following the submission to and report of the committee on membership as to eligibility?

The case of *Matter of Importers & Exporters Insurance Company* v. *Rhoades* (239 N. Y. 420, *supra*), cited by defendant in support of such claim, is authority to the contrary. In that case the

New York Fire Insurance Rating Organization, whose power over its members was the subject-matter of that action, was organized under sections 141, 141-a and 141-b of the Insurance Law, as amended by chapter 660 of the Laws of 1922,* which law provides that every such rating organization " shall admit to membership or shall furnish its service without discrimination to any person, association or corporation 'authorized to transact the business of fire insurance within this state, applying therefor," and the court in that case says: " But the distinction is obvious between a rating association existing under the statute and one existing solely by agreement of members. The latter may pick and choose; the former must furnish its service to any corporation authorized to transact the business of fire insurance within the State which agrees to be bound by the rules affecting rates to be paid for insurance.   *   *   *
" The question is one of the statutory power of the rating organization to make rules."

Said sections 141-a and 141-b of the Insurance Law provide for and regulate organizations " for the purpose of suggesting, approving or making rates for fire insurance   *   *   *   within this State."

The court in the *Rhoades* case (at p. 423) says: " The purpose of the law is to give all corporations authorized to transact the business of fire insurance in this State the privilege of membership in such an organization."

The purpose of plaintiff association, as expressed in section 2 of the law of its incorporation, is " To inculcate just and equitable principles in the business of insurance; to establish and maintain uniformity among its members, in policies or contracts of insurance, and to acquire, preserve and disseminate valuable information relative to the business in which they are engaged."

The power of the rating organization " to make rules is limited by the statute to ' rules affecting such rates [rates of insurance] ' or ' rules   *   *   *   employed in computing rates,' " quoted from page 423 of the opinion in the *Rhoades* case.

Plaintiff, although a membership corporation, is in substance a voluntary association; it may accept any eligible applicant for membership, or it may reject any such applicant for any reason or no reason at all. If less than four-fifths of the members present at the meeting, at which the application is voted on, vote for the applicant, the applicant is rejected.

It follows that it " may pick and choose " its members, and that membership is not a right, but is, if plaintiff so elects, as a condition of membership, a personal privilege.

* See, also, Laws of 1923, chap. 436.— [Rep.

The regulation of and making commissions uniform among its members, by plaintiff, is not contrary to law nor public policy.

In principle the decision in *People ex rel. Pinckney* v. *N. Y. Board of Fire Underwriters* (7 Hun, 248) applies to and is decisive of the matters involved herein. In that case the defendant was incorporated under a law as to the stated purposes of the corporation, and its stated powers to make by-laws, exactly the same as the law incorporating plaintiff.

The gist of that decision is stated in the syllabus as follows: " Where a corporation is formed for the purpose of establishing uniformity in the insurance policies and contracts of its members, it is a tacit condition of membership, that a member will not oppose or injure the interests of the corporate body; and if he breaks this condition — *e. g.*, by insuring for smaller amounts than those established by the corporation — he may be expelled, on trial and conviction by the corporation."

That the rates of fire insurance and the commissions of life insurance agents are proper subjects for regulation have been recognized by our Legislature in the enactment of laws to that effect, which laws have been fully sustained by the courts.

The United States Supreme Court in a decision handed down January 5, 1931 (283 U. S. 251), in the action of *O'Gorman & Young* v. *Hartford Fire Ins. Company*, in passing upon a New Jersey statute limiting the commissions of fire insurance agents, announced the law as follows: " The business of insurance is so far affected with a public interest that the state may regulate the rates [citing cases] and likewise the relations of those engaged in the business [citing cases]. The agent's compensation, being a percentage of the premium, bears a direct relation to the rate charged to the insured. The percentage commonly allowed is so large that it is a vital element in the rate structure and may seriously affect the adequacy of the rate. Excessive commissions may result in an unreasonably high rate level or in impairment of the financial stability of the insurer. * * * Moreover, lack of a uniform scale of commissions allowed local agents for the same service may encourage unfair discrimination among policy holders by facilitating the forbidden practice of rebating." (See, also, *Burden* v. *Burden*, 8 App. Div. 160; affd., 159 N. Y. 287.)

The contention of defendant that article 16 of plaintiff's by-laws, adopted July 3, 1929, and the other by-laws in question that serve to make the provisions of such article 16 effective, are *ultra vires* and void, as not being within the purposes for which plaintiff association was incorporated, raises a more serious question.

However, I am of the opinion that such by-laws, and the pro-

visions thereof, are within the fair intendment of the words of the purpose clause of the act of incorporation, which read: " The purpose of this corporation shall be to inculcate just and equitable principles in the business of insurance; to establish and maintain uniformity among its members, in policies or contracts of insurance." To provide for and require its members to accept uniform commissions would be " to inculcate [instill, impress] just and equitable principles in the business of insurance."

Uniform commissions tend to obviate " the unfair discrimination among policy holders * * * [and] * * * the forbidden practice of rebating." (Quoted from *O'Gorman & Young* v. *Hartford Fire Ins. Company, supra.*)

If plaintiff has no power to enforce upon its members the " just and equitable principles of insurance " which it was created and exists " to inculate," then both plaintiff and the law of its incorporation are idle gestures.

It would seem that plaintiff may say to each of its members, on behalf of itself and all of its other members, if you are to play with us you may not play against us. Or, as is said in the opinion in *People ex rel. Pinckney* v. *N. Y. Board of Underwriters* (7 Hun, *supra*, at p. 251): " It has been said to be a tacit condition, annexed to the franchise of a member, that he will not oppose or injure the interests of the corporate body, and, ' consequently if he breaks this condition he may be disfranchised.' "

As to defendants' seven agency contracts, before mentioned, five of them are for no definite period and are terminable by either party at will; compliance with the by-laws in question, by reducing the commissions defendant is to receive for policies it places with such companies would follow, as matter of course, upon suggestion thereof. However, the choice is with defendant, whether to give up its connection with plaintiff association, or reduce such contract commissions to conform to plaintiff's by-laws.

When defendant was admitted to membership in plaintiff association it expressly agreed to be governed by all the rules and regulations of the plaintiff; such agreement was a contract between defendant and plaintiff; it was made long before the agency contracts in question were made. Defendant could not thereafter voluntarily, by contract, place itself in such position that it must violate either its contract with plaintiff or abrogate such subsequent contracts, and then equitably claim relief from the burden of its prior contract with plaintiff.

The foregoing applies with even greater force to the agency contract defendant made with the American Colony Insurance Company, one of the two agency contracts defendant has entered

into, for a period of ten years from May, 1928. As the ten-year term of such agency contract was agreed upon by the parties thereto by a supplemental agreement entered into by such parties September 30, 1929 (see defendant's Exhibit 7), July 3, 1929, was the date of the adoption by plaintiff of the last of the by-laws in question herein.

The agency contract with the Mohawk Fire Insurance Company, which is the only other definite period agency contract defendant is a party to, was made May 8, 1928, and then contained the following provision: " 5. This agreement shall continue from year to year until terminated by either party. The agreement may be terminated at any time by either party." (Defendant's Exhibit 6.)

It was not until May 18, 1929, that by an " agreement of revisal of contract " the above section 5 was eliminated from said agency contract, and the following substituted: " This agreement shall begin on the eighth day of May, 1928, and terminate on the eighth day of May, 1938." (Defendant's Exhibit 6.)

It is a fair inference that such " agreement of revisal " of May 18, 1929, was procured by defendant to be made to forestall such qf said by-laws as had not then been actually adopted, but the adoption of which in the immediate future seemed certain, and so as to place defendant in the position where it could make the claim, in regard to long term agency contracts previously entered into, that it is now making herein; and it would be, under the circumstances, inequitable to make such " agreement of revisal " the basis of an order or judgment restraining plaintiff from acting, as to defendant, under its by-laws in question herein; still the terms thereof are definite, conclusive and binding upon defendant. As it was actually entered into prior to the adoption of the amended by-laws adopted July 3, 1929, the continuance of defendant as agent of the Mohawk Fire Insurance Company under such agency contract, and " agreement of revisal " for the term thereof, may not be held or construed by plaintiff to be a violation of the terms of the by-laws in question herein.

I find and declare:

1. That the plaintiff's by-laws, comprising article 16, section 1, is within the powers of plaintiff to adopt and is valid and enforcible.

2. That such by-law may be applied to defendant and compliance therewith required of defendant as a condition of its continued membership in plaintiff.

3. That neither such by-law, nor the by-laws supplementary thereto, violate any vested rights or privileges of the defendant.

4. That defendant's continuance as agent of the Mohawk Fire Insurance Company, under its agency contract with that company

dated May 8, 1928, and the " agreement of revisal " thereof dated May 18, 1929, for the contract period fixed in the " agreement of revisal," may not be held by plaintiff to be a violation of the terms of said by-laws.

5. That the plaintiff had and has the lawful right and authority to enact and enforce the by-laws in question herein, viz.: Article 16, section 1; article 2, sections 1, 11, 12, 13 and 14, Membership; article 12, section 1, Company Representation; Non-Association Companies, and article 9, section 1, Non-Intercourse.

6. That defendant is not entitled to any injunction against the plaintiff.

The plaintiff is allowed the costs of the action against defendant.

Let findings be prepared and judgment entered accordingly.