THE BUFFALO ASSOCIATION OF FIRE UNDERWRITERS, Respondent, v. NOXSEL-DIMICK COMPANY, Appellant.*

Fourth Department, March 16, 1932.

* Revg. 141 Misc. 333.

*Francis J. Maloney* and *Henry W. Killeen,* for the appellant.

*Carlos C. Alden,* for the respondent.

SEARS, P. J.   The plaintiff is a domestic membership corporation created by chapter 668 of the Laws of 1881 of the State of New York. The defendant also is a domestic corporation engaged in the general insurance business in the city of Buffalo, N. Y.   Following the incorporation of the defendant in July, 1909, it became a member of the plaintiff, and has continued as such ever since.

The purposes for which the plaintiff was organized, as stated in the statute of incorporation, are as follows: " To inculcate just and equitable principles in the business of insurance; to establish and maintain uniformity among its members, in policies or contracts of insurance, and to acquire, preserve and disseminate valuable information relative to the business in which they are engaged." The statute authorizes the plaintiff to make all needful by-laws not contrary to the provisions of the incorporating act or the Constitution and laws of this State or of the United States.   The power thus given to adopt the by-laws must be read in connection with the purposes for which the corporation was created.   It is self-evident that it cannot extend the purposes beyond those laid down in the statute.   (*Hurst* v. *N. Y. Produce Exchange,* 100 N. Y. 605; *People ex rel. Johnson* v. *N. Y. Produce Exchange,* 149 id. 401; *People ex rel. Thacher* v. *New York Commercial Assn.,* 18 Abb. Pr. 271.)

In 1929 the plaintiff association adopted certain by-laws, one section of which gives rise to the main question involved in this action.   This section of the by-laws is as follows: " Article Sixteen, Section 1.   All members of this Association are bound by the conditions of the agency agreements adopted by the Association, and no member shall receive or accept, directly or indirectly, a higher rate of commission nor other valuable consideration than is provided in said agreement."

The agency agreements referred to in the above-quoted section of article sixteen provide for certain uniform commission percentages to be paid to or retained by insurance agents in payment of their services based upon net premiums.

The principal insurance companies doing business in Buffalo and its vicinity are members of an association which recognizes and requires its members to do business with agents in accordance with such agreements, and these companies do accordingly pay

their agents only the commissions specified therein. There are, however, a few companies smaller in size, but sound financially, doing business in Buffalo and vicinity, and authorized by the State to do an insurance business which are not members of any association requiring the use of the agency agreements referred to in their relations with their agents. These smaller companies pay their agents commissions based on higher percentages than those specified in the agency agreements. The defendant has for a long time acted as agent for seven such companies, and has been receiving from them higher commissions than those specified in the agency agreements referred to in plaintiff's by-laws.

A controversy has arisen between the plaintiff and defendant as to the validity of section 1 of article sixteen, particularly in respect to its provision requiring uniform commissions. Under other by-laws of the plaintiff, a violation of article sixteen by the defendant, occurring through receiving the higher commissions, will expose the defendant to the penalty of deprivation of membership in the plaintiff. The controversy as to the validity of article sixteen is, therefore, real and a proper case is presented for a declaratory judgment in respect to the validity of section 1 of article sixteen of the plaintiff's by-laws.

The question presented is whether the enforcement among plaintiff's members of uniform commission rates is within the purposes of plaintiff's organization as specified in its statutory charter. The last clause in the statement of purposes, contained in the incorporating statutes, that is, " to acquire, preserve and disseminate valuable information relative to the business in which they are engaged," manifestly has no bearing upon the subject covered by the by-laws in question. The second clause, that is, " to establish and maintain uniformity among its members, in policies or contracts of insurance," likewise appears to us irrelevant to the subject of enforcing uniformity of commissions. When the statute was enacted there was no statutory provision for standardization of policies. (Laws of 1886, chap. 488; *Quinlan* v. *Providence Washington Ins. Co.*, 133 N. Y. 356.) It was to bring about, at least to a limited extent, uniformity in contracts between the insurer and the insured, including probably premium rates, that this clause in the statement of purposes related. (*People ex rel. Pinckney* v. *Fire Underwriters*, 7 Hun, 248.) The agency agreements are by no stretch of the imagination policies or contracts of insurance. Agents' commissions are an entirely different matter from rates of premiums. (*Matter of Importers & Exporters Ins. Co.* v. *Rhoades*, 239 N. Y. 420.)

We come then to a consideration of the first clause, " To inculcate

just and equitable principles in the business of insurance," as the sole possible source of validity for the by-law in question.

No evidence is offered that the amounts received by the defendant as commissions from the companies it has been representing are in and of themselves improper or excessive, or work hardship or injustice to insurer or insured. The only claim made, as we understand it, is that uniformity of commissions is a just and equitable principle of the insurance business. It seems to us that the statutory phrase in using the words, "just and equitable principles," intended for them no such extended content. (*People ex rel. Thacher* v. *New York Commercial Assn., supra; Matter of Haebler* v. *N. Y. Produce Exchange*, 149 N. Y. 414.)

It has been held by the Federal Supreme Court that a statute establishing uniform rates of insurance agents' and brokers' commissions is not violative of the Fourteenth Amendment of the Federal Constitution but is within the police power of a State. (*O'Gorman & Young* v. *Hartford Fire Ins. Co.*, 282 U. S. 251.) The principle established in that case, however, has no bearing here. It may be conceded for the purpose of argument that the plaintiff might have been authorized to establish uniform schedules of commissions. The trouble we find with the by-law is not in the power of the Legislature but in the exercise by the plaintiff of the limited power over its members granted by the incorporating act. We reach the conclusion that the power to inculcate just and equitable principles and otherwise to carry out to the full the purposes stated in the statute does not include a power to enforce uniformity of commissions in the transaction of insurance business. A grant of such a power calls for its clear expression.

The by-law we have been considering is invalid for another reason, even should it be conceded that under the powers granted the plaintiff in its statute of incorporation authority was included to establish and maintain uniformity in rates or premiums paid by the insured and as incidental thereto to provide for uniformity in brokers' commission percentages. (*O'Gorman & Young* v. *Hartford Fire Ins. Co., supra.*) In this view the power of the plaintiff to deal with the subject of uniformity of brokers' commission percentages continued only as long as the plaintiff had power to deal with the subject of premium rates and did continue to deal with that subject. By section 141 (added by Laws of 1911, chap. 460, as amd. by Laws of 1923, chap. 436) and the following sections of the Insurance Law the State has taken the power to deal with the subject of premium rates from associations like the plaintiff unless certain formalities are complied with by the associations. The plaintiff seems not to have complied with these formalities. It certainly does

not deal with the subject of uniform premiums. The finding of fact is to the effect that " the premium rate, charge or cost to the insured for fire insurance coverage within the jurisdiction of the plaintiff association is regulated and fixed by State law in all cases, at the rates promulgated by the New York Fire Insurance Rating Organization, and the rate at which a given risk or policy is or can be taken or written is the same for all fire insurance companies authorized to do business in the State of New York." The plaintiff then no longer having anything to do with promulgating uniform premiums, the subsidiary power to establish and maintain uniform commissions to brokers falls with the termination or relinquishment of the power to which it was subsidiary.

Other matters were presented upon this appeal. As to the sections of the by-laws, other than article sixteen, section 1, we find no existing controversy between the parties. It is unnecessary to consider the particular relations between the defendant and the companies which it represents in view of our construction of the statutory charter of the plaintiff and the effect of the sections of the Insurance Law above referred to.

The judgment so far as appealed from should be reversed and judgment granted in favor of the defendant and against the plaintiff declaring section 1 of article sixteen of the by-laws of the plaintiff adopted July 3, 1929, to be invalid.

All concur, CROUCH, J., on the second ground stated in the opinion only, except CROSBY, J., who dissents and votes for affirmance. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment so far as appealed from reversed on the law, with costs, and judgment granted in favor of the defendant against the plaintiff, declaring article sixteen, section 1, of the plaintiff's by-laws invalid, with costs.