In the Matter of NORTHWESTERN NATIONAL INSURANCE COMPANY, Respondent, against LOUIS H. PINK, as Superintendent of Insurance of the State of New York, Appellant.

Argued March 11, 1940; decided July 29, 1942.

*John J. Bennett, Jr., Attorney-General (Henry Epstein, William J. Cahill* and *M. Kaplan* of counsel), for appellant. In denying petitioner's license under the facts herein stated the Superintendent of Insurance has exercised his given powers within the area of discretion marked out by the Insurance Law. (*German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389; *O'Gorman & Young, Inc.,* v.

*Hartford Fire Ins. Co.*, 282 U. S. 251; *Buffalo Assn. of Fire Underwriters* v. *Noxsel-Dimick Co.*, 235 App. Div. 92; *Matter of Importers & Exporters Ins. Co.* v. *Rhoades*, 239 N. Y. 420.)

*Frederick T. Case* for respondent. The statutes do not give the Superintendent of Insurance any power to regulate or limit rates of commission to be paid to fire insurance brokers and he has only such powers as the law gives him. (*Matter of N. J. Fidelity & Plate Glass Ins. Co.* v. *Van Schaick*, 236 App. Div. 223; 261 N. Y. 521; *Wallace & Co.* v. *Ferguson*, 70 Ore. 306; *Liverpool & London & Globe Ins. Co.* v. *Clunie*, 88 Fed. Rep. 160; *Matter of Continental Guaranty Corp.* v. *Craig*, 240 N. Y. 354; *People ex rel. Municipal Gas Co.* v. *Pub. Serv. Comm.*, 224 N. Y. 156; *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Wilcox*, 200 N. Y. 423.) The powers of the Superintendent of Insurance to supervise rates of premium do not give him power to fix or regulate rates of commission for brokers. (*Matter of Importers & Exporters Ins. Co.* v. *Rhoades*, 239 N. Y. 420; *Buffalo Assn. of Fire Underwriters* v. *Noxsel-Dimick Co.*, 235 App. Div. 92; *People ex rel. N. Y. Fire Ins. Exchange* v. *Phillips*, 237 N. Y. 167; *Commercial Standard Ins. Co.* v. *Board of Ins. Commrs. of Texas*, 34 S. W. Rep. [2d] 343.) The belief of the Superintendent of Insurance that so-called " excess commissions " are an evil cannot serve to extend his power beyond what the law gives him. (*Matter of Smith* v. *Morgan*, 253 App. Div. 239; *Matter of New York Good Humor, Inc.*, v. *Morgan*, 171 Misc. Rep. 899; *Matter of Levy* v. *Valentine*, 172 Misc. Rep. 130.) The power of the Superintendent of Insurance to grant and revoke licenses does not authorize indirect control of matters not entrusted to his control. (*Commercial Standard Ins. Co.* v. *Board of Insurance Commissioners*, 34 S. W. Rep. [2d] 343; *Matter of Factory Mutual Liability Ins. Co.* v. *Behan*, 233 App. Div. 614; *Homesteaders Life Ins. Co.*, 224 Iowa, 173; *Matter of American Molasses Co.* v. *McGoldrick*, 256 App. Div. 649; *Matter of Small* v. *Moss*, 255 App. Div. 1; 279 N. Y. 288; *Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157; *Chicagoland Agencies* v. *Palmer*, 364 Ill. 13; *Green Point Sav. Bank* v. *Zoning Appeals Board*, 281 N. Y. 534.)

LOUGHRAN, J. This is an appeal by the Superintendent of Insurance from an order directing him to issue to the petitioner

a renewal of its foreign insurer's license to do business in this State.

The Insurance Law (Cons. Laws, ch. 28) provides: "The super-intendent shall issue a renewal license to any foreign or alien insurer if he shall be satisfied, by such proof as he may require, that such an insurer is not delinquent with respect to any requirement imposed by this chapter and that its continuance in business in this state will not be hazardous or prejudicial to the best interests of the people of this state " (§ 42, subd. 2). The Superintendent found that the peti-tioner had paid " excess commissions " to brokers who brought in its local fire insurance business. He made also this finding: " The payment of excess commissions is an evil in the business and reacts disadvantageously to the policyholders, companies, and producers. The interests of the people of this State will be best promoted by a discontinuance of the practice."

This basis for the refusal to renew the petitioner's license has been explained by the Superintendent in these words: " The payment of excess commissions has been an abuse in the fire insurance business for many years. It goes back at least to 1898. Chaos in fire insurance rates followed the collapse of the 'Tariff Association' in that year. * * * Due to that chaos in 1898 a meeting was called which was attended by representatives of nearly every joint stock fire insurance company doing business in New York and which resulted in the formation of the New York Fire Insurance Exchange. Companies writing approximately ninety-eight per cent of the fire insurance premiums in the metropolitan area are members of the Exchange. The companies which are members and which write ninety-eight per cent of the business have voluntarily agreed upon a rate of commissions to be paid to brokers. The Northwestern National Insurance Company [this petitioner] is not a member of the Exchange. * * * I might as well state we have no fault to find with the Northwestern insofar as its financial strength goes, or insofar as its practices go, excepting in this particular matter. * * * The company itself is financially sound and no question is raised except with regard to its practice of paying excess commissions."

In other words, the determination of the Superintendent was to this effect: No foreign or alien insurer may do the business of fire insurance in this State unless it adopts for that purpose the rate of

brokerage commissions formulated by the voluntary agreement of the members of the New York Fire Insurance Exchange. We do not read the foregoing provision of the statute as an authorization to the Superintendent to construct a prohibition of that size.

Rate making is a governmental process which according to the accepted classification is legislative, not judicial (*Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294, 318). The Legislature, of course, can limit to a reasonable extent the rates of commissions to be paid to brokers of insurance and its competency in that regard can be committed to an administrative body. But the Superintendent here disavowed any delegation to him of such power. On that point, he said: " I believe and have frequently stated that eventually it will probably be necessary for the Legislature to give the Department some direct control over commissions for the proper policing of the business. * * * I have also stated and again repeat that in view of the fact that the Legislature has not given such direct control to the Department I do not wish to fix commissions." There is no denying, however, that the rate of commissions declared by the members of the New York Fire Insurance Exchange was fixed with the compulsion of a law against foreign insurers, in consequence of the departmental determination of which the petitioner complains.

Section 42 of the Insurance Law (*supra*) cannot be taken to have conferred such an equivalent of a power which the Legislature has refused to grant expressly. The regulation authorized by section 42 is obviously aimed at delinquencies or deficiencies of an individual concern. The pronouncement of general policy here attempted by the Superintendent was not justified by that section.

The order should be affirmed, with costs.

FINCH, J. (dissenting.) The Superintendent of Insurance, in refusing a license to this foreign insurer, is not attempting to regulate brokers' commissions. He does not have and does not assume to have any such power (*Matter of Importers & Exporters Ins. Co.* v. *Rhoades*, 239 N. Y. 420). All that he is doing is to prohibit a foreign insurer from coming into this State and paying commissions in excess of those voluntarily fixed by the members of the New York Fire Insurance Exchange, which do about ninety-eight

per cent of the fire insurance business transacted in the metropolitan areas of this State. That is a very different thing from prescribing rates. The Superintendent does not say what the rates shall be. He has no control over that. The members of the Exchange may raise or lower rates whenever and as often as they so decide.

The petitioner, a foreign insurance company, has failed to adhere to these rates. For this reason the Superintendent of Insurance has refused to renew its license to do business within this State. The Superintendent has based his refusal upon the discretion which he contends is vested in him by the provisions of section 42 (subd. 2) of the Insurance Law. This section provides that the Superintendent shall issue a renewal license to a foreign insurer provided the latter is not delinquent with respect to any requirements imposed by the Insurance Law, and provided further that the Superintendent shall be satisfied " that its continuance in business in this state will not be hazardous or prejudicial to the best interest of the people of this state."

Obviously, the Superintendent has been charged with a greater duty than merely to see to it that the specific directions found in the Insurance Law are observed. Here is a plain mandate by the Legislature that the Superintendent must do more than merely look to the letter of the statute; otherwise, the second criterion contained in subdivision 2 is meaningless.

The question here presented, therefore, is whether in this case the Superintendent of Insurance has lawfully exercised the powers conferred upon him under the Insurance Law. What he has done in effect in this case is to compel this foreign insurer to observe a reasonable regulation subscribed to by the vast majority of fire underwriters doing business in this State. He has undertaken this action only upon a finding that unless there is a limitation upon brokerage commissions paid by this foreign insurer, its continuance in business in this State will be hazardous and prejudicial to the best interest of the people of this State.

The above conclusion is based upon findings that the experience of fifty years in the insurance business has demonstrated that some restraint must be placed upon commissions paid to brokers. Unbridled competition among the insurers in this regard has in the past frequently resulted in an unhealthy competitive condition

imperiling the public interest in preserving the financial soundness of the companies and the maintenance of low acquisition costs. Furthermore, a correlation between commissions and premiums has received legal recognition (*O'Gorman & Young, Inc.,* v. *Hartford Fire Ins. Co.,* 282 U. S. 251, 256; *Buffalo Ass'n of Fire Underwriters* v. *Noxsel-Dimick Co.,* 235 App. Div. 92, affd., 260 N. Y. 678). The payment of commissions constitutes a substantial percentage of acquisition costs, which in turn determine premium rates. Payment of unduly large commissions has in consequence an important bearing both upon the premium rates charged to the public and the profit realized by the company.

It will not do to say that conceding the Superintendent the power asserted by him in this case would leave him free to coerce individual foreign insurers into observing all the standards adopted by domestic companies, even if these standards were devised for the sole purpose of placing foreign insurers at a competitive disadvantage. In reviewing the quasi-judicial acts of the Superintendent of Insurance under this section, the courts in the case at bar must determine first that there is reasonable basis for holding that the doing of business in this State by the foreign insurer will be hazardous and prejudicial to the best interest of the people of this State and, second, that there is adequate evidence to support this conclusion. It cannot be said that the basis for the finding of the Superintendent is unreasonable, or that it is unsupported by adequate evidence.

It follows that the order appealed from should be reversed and the determination of the Superintendent of Insurance affirmed.

LEHMAN, Ch. J., RIPPEY and LEWIS, JJ., concur with LOUGHRAN, J.; FINCH, J., dissents in opinion in which CONWAY and DESMOND, JJ., concur.

Order affirmed.